LEWIS BODWELL v. L. M. CRAWFORD.

RECOVERY OF PREMISES, *Not by Injunction.* Where a party enters into the possession of premises without any authority from the owner and under pretense of a lease made by an unauthorized agent, and puts said premises to a use which is not forbidden by the law, the owner's remedy is an action at law to recover the possession, and he may not resort to equity and obtain an injunction, and thus take away the constitutional right of a trial by jury, on the ground that such use is in his judgment immoral and mischievous in its tendencies, and one calculated to injure his reputation in the community.

*Error from Shawnee District Court.*

ACTION brought by *Bodwell* against *Crawford*, to restrain the defendant from using for general amusements, and especially for theatrical purposes, a certain building situate upon lots 217, 219 and 221, on Van Buren street, in the city of Topeka, and to abrogate a certain lease, etc. The nature of the action, and the facts, appear in the opinion. The defendant filed a general demurrer to the petition, which the court on May 30, 1881, sustained. This ruling the plaintiff brings here.

*S. O. Thacher*, and *John Martin*, for plaintiff in error.

The opinion of the court was delivered by

BREWER, J.: This is an application for an injunction, filed in the district court of Shawnee county. But one question is presented in the record, and that is, whether upon the allegations in the petition the plaintiff is entitled to an injunction? The district court held that he is not, and from such ruling the plaintiff alleges error. The petition, in brief, states these facts: The plaintiff, as was well known to the defendant, is an eminent Congregational clergyman of pronounced opinions on all moral questions of the day. He was an early settler in Topeka, for some years pastor of the Congregational church in that place, and his reputation there was fixed as a man who believed in the pernicious effects of theaters. For some time past he has resided in the state of New York, but still owning real estate in Topeka, which from time to time he leased to various parties through special contracts executed by himself. In looking after his business and collecting rents, he employed as agents, Ross & Stillson, who had, however, no authority to lease or to bind the plaintiff by any new contracts. These agents attempted to lease lots of plaintiff's, on which was erected a building known as the "Tabernacle," to the defendant for the purpose of general amusements, including theatrical performances. Plaintiff's repugnance to such amusements was well known to his agents, and should have been known by defendant. As soon as plaintiff heard of this transaction, which he did in a very few days by seeing a notice of it in the paper, he repudiated the same by telegraph to the parties, demanding the abrogation of the pretended lease and the cessation of the use of his property for the purposes mentioned, but the defendant declined to abandon the property or discontinue the use. Hence, this action was brought.

Do these facts show a case for the interference of a court of equity by the remedy of an injunction? It is clear that the plaintiff, having never leased the lot or authorized its lease, is entitled to his legal action to recover possession.

The defendant has taken possession without authority from the owner, and he has no right to such possession. In all such cases of the unauthorized taking possession of real estate, the ordinary remedy is an action at law for the recovery of possession. Under some circumstances the owner may maintain forcible entry and detainer, and in all he may maintain ejectment. Both are actions at law. Has he the further remedy of injunction? Counsel for plaintiff concede that this is a case of first impression, and that a careful examination of the authorities discloses no precedent for such an action. They insist, however, that our statute concerning injunctions is very broad — broad enough to cover such a case as this — and that unless equity will interfere there is no adequate remedy. Section 238 of the code authorizes "restraining the commission or continuance of an act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff." The unauthorized possession by defendant is of course an injury to plaintiff's rights, and entitles him to relief; but no one will contend that a mere unlawful possession gives occasion for the interference of a court of equity. The reasons for this are familiar to every lawyer. In equity neither party is of right entitled to a jury, but the constitution preserves inviolate the right of trial by jury as it exists at the common law, and an action for the recovery of real estate is one in which at common law parties are entitled to a trial by jury. They have a right to the verdict of a jury upon the questions whether plaintiff was owner, whether the defendant was in possession, and whether if so the possession was unlawful. In this very case defendant has a right to the verdict of a jury upon the questions whether Ross & Stillson were general agents of plaintiff and generally authorized to bind him by leases, or were specially authorized to make a lease of these lots without any limitations as to the purposes for which they should be used, and indeed upon every fact essential to plaintiff's right to the possession of the premises. The legislature has not the power, even if it should attempt it, to deprive a party of this right of trial by jury by

simply changing the form of the action; for if it could in respect to the recovery of real estate, it could in respect to any other common-law action, and so by simply legislating as to forms, set at naught the constitutional guaranty. Does the fact that the defendant, having an unlawful possession, is using the property for purposes abhorrent to the plaintiff's convictions, justify the interference of a court of equity? It must be borne in mind that the use to which this property was put by defendant, however obnoxious to the plaintiff, is not illegal. The defendant violates no law in running a theater, and whatever may be the opinions of the plaintiff or others as to the immoral tendencies of the theater, the law does not condemn its existence. Doubtless the plaintiff feels outraged by having his property used for such purposes, but can it be said that his legal rights are infringed by use for any purpose which the law does not condemn? Careful reflection convinces us that equity will be permitted to interfere to restrain a use, if at all, only when the use is illegal; for there are vast numbers of uses to which property may be put which are sanctioned by law, yet which are immoral in their tendencies in the judgment of many, and obnoxious to their convictions of what is right, as well as what is useful and best for society. One may disbelieve in theaters, another in public ball-rooms, and a third in rooms where brokers gamble in stocks, provisions, etc., while still another in lecture-rooms which are open to Spiritualists, Universalists, and infidels. Political convictions are intense in some, and the use of their property by the adherents of another political party, or for the dissemination of opposite political opinions, would be felt to be an outrage and trespass upon their convictions. Indeed, the diversity of belief is so great that a vast number of the uses to which property may legally be put, would be found wrong in the judgment of some. In all such cases can equity be permitted to interfere and restrain the use because of the honest convictions of the owner of the impropriety or immorality of such use? The very great number of cases which in such event would be transferred from the domain of law

to that of equity, and thus be relieved from the constitutional guaranty of a trial by jury, compels the conclusion that no precedent can be found, because none can constitutionally be made.   Counsel refer to cases in which a lessor has obtained an injunction to restrain the lessee from putting property to uses forbidden by the lease, but those cases are not in point; the principle which underlies them is very different.   The lessor has a right to the continuance of the lease, to the benefits of the rent; in affirming the contract he is simply insisting that the lessee shall also conform to the contract. · True, he may perhaps declare the lease forfeited and recover the property, but he may not desire to do this; he may not be able to lease for the same rent or to an equally responsible tenant, and the lessee ought not to be permitted to compel the lessor either to take back the property or tolerate a forbidden use.   But here the unauthorized lease was for theatrical purposes; the plaintiff cannot affirm it in part and disavow it in part.   He cannot compel the defendant to retain the property and pay rent and at the same time discontinue the purpose for which he attempted to lease it.   By his suit he disavows this act of his agents — this unauthorized lease — and must therefore repudiate it *in toto*.   It is simply the case of the defendant unlawfully taking possession of the plaintiff's property.   The relation of landlord and tenant never existed.   There is no contract relation between the parties.   Defendant by his possession and use has violated no contract, and by his use violates no law.   In such case the only remedy is the ordinary common-law action for the recovery of possession.

So far as the reputation of the plaintiff is concerned in the community where he once lived, where he is now well known and honored, that reputation is sustained by his prompt disavowal of the unauthorized lease and an action at law for the recovery of possession, as fully as it would be by a suit in equity.   He stands before the community proclaiming his continued adherence to his old-time convictions, and cannot for a moment be thought to have dallied with what he be-

lieves to be wrong. Those convictions the law will respect; it will protect defendant in his adherance to them, and will give to the fullest extent all its ordinary processes and remedies for their protection.

Counsel, conceding that there is no precedent to sustain this action, intimate that this court should establish one; but it is the duty of courts to stand by the ancient landmarks, to walk *super antiquas vias.* Additional remedies must be established by other bodies and in otherways.

The conclusion therefore to which we are necessarily led is, that the facts stated by plaintiff in his petition are not such as will entitle him to the interference of a court of equity, or take away the constitutional guaranty of trial by jury.

The judgment of the district court will therefore be affirmed.

All the Justices concurring.