## UNITED STATES *v.* BRIGHTON RANCHE CO.

*(Circuit Court, D. Nebraska.* May Term, 1885.)

PUBLIC DOMAIN—TRESPASS—INJUNCTION TO RESTRAIN PURPRESTURE.

Where persons build a fence partly on their own land and partly on lands belonging to the government, whether the act be technically a purpresture or simply a public nuisance, an action may be maintained in equity to compel, by mandatory injunction, the removal of the fence from the government land.

On Exceptions to Answer.

*G. M. Lambertson,* for the United States.

*J. M. Woolworth,* for defendants.

BREWER, J.   This case comes before us on three exceptions to the answer.   Judge DUNDY and I have each examined the case, and agree in conclusions which I now announce.

The underlying facts are these :   The defendant has built a fence, partly on his own land and partly on land belonging to the government, and inclosing a tract of several thousand acres.   This is an action in equity to compel, by mandatory injunction, the defendant to remove its fence from the government land, and thus leave the inclosed government land free from all obstructions to approach.   Of course, the government title is conceded, and its right to proceed by an action of ejectment to remove the defendant from occupancy of any of its land is unquestioned.

The question made is whether the government can come into a court of equity and avail itself of the summary remedies given by such a court.   We are of the opinion that it can; and, whether the act of the defendant comes within the technical definition of purpresture or that of a public nuisance, we are of the opinion that the government can come into a court of equity and by its orders have an end put to this trespass on the public rights.

Something was said in the argument in respect to the government tolerating such occupation of its public land, and the answer alleges that it has been the policy of the government to permit occupation similar to that of the defendant.   The case of *Rector* v. *Gibbon,* 111 U. S. 276,[1] is cited in support of this view.   Doubtless the government has and does tolerate in a certain sense the occupation of the public lands, and wherever such occupation is either under the homestead or pre-emption act, or other acts, with a view to the purchase of the land, the occupation may be considered rightful.   But the answer fails to disclose an occupation with any such intent, and the only occupation disclosed is one, not for the purpose of subsequent purchase, but with the idea of getting the benefit of the land for grazing purposes.   Even if the policy of the government heretofore had been to tolerate the occupation and inclosing of tracts of government land for grazing purposes, the fact that an action is now commenced,

[1] S. C. 4 Sup. Ct. Rep. 605.

to put an end to such occupation is conclusive that the policy of the government is changed, and no rights are acquired against the government by a hitherto unchallenged occupation. So long as the government does nothing, an individual might, perhaps, not challenge the occupation by defendant; but the right of the government to interfere, to challenge the occupation, and to compel the defendant to desist from it, is not lost by mere delay in enforcing it.

We think, too, an action of injunction is the appropriate remedy, and that an action of ejectment would not furnish full protection to the government. Generally speaking, any encroachment upon the public domain may be restrained or ended by injunction; and in this case it was not the mere fact that the fence is built upon government land, because such fence operates not only as an entry upon the particular land upon which the fence is built, but also to separate the inclosed lands from the general body of the public domain. So that we think full and adequate remedy can be obtained only in a court of equity, which reaches the individual and compels him to abandon and desist from any encroachment on the public property. In this view the first and second exceptions must be sustained.