## WOLFE v. ERIE TELEGRAPH & TELEPHONE CO.

*(Circuit Court, E. D. Texas. December 10. 1887.)*

1. MUNICIPAL CORPORATIONS—STREETS—ERECTION OF POLES—LIABILITY.

In an action for damages occasioned by the collision of plaintiff's buggy against a telephone pole, while driving a usually gentle horse, which had become unmanageable by fright, defendant claimed that the erection of the pole in the street was authorized by the city, and not defendant, but the latter was liable. *Held* that, if the pole was a dangerous obstruction to the use of the street by the public, the city could not lawfully permit its erection so as to debar recovery by an injured party, and if it had, each and both were liable.

2. SAME.

The validity of a permit granted by a city to locate a pole in a street extensively used by the public as a thoroughfare, although conferred in accordance with the authority given by law, will, in an action for damages sustained by reason of a buggy striking such pole, be made subject to the determination by a jury as to whether the pole so located was in point of fact dangerous to the public.

3. SAME.

For injuries sustained by plaintiff while driving a horse that became frightened from some cause, in striking with his buggy a telephone pole unlawfully erected in the street of a city, he is entitled to recover damages from defendant telephone company, or from those aiding, assisting, or permitting the obstruction, so long as he used every effort to manage and subdue the horse, and did not leave the buggy before the collision occurred.

4. SAME.

If another person than the owner unhitches a horse and buggy standing securely in the streets of a city, and the horse becomes frightened, breaks the buggy, and is injured in running against an obstruction unlawfully placed in the street by a telephone company, the latter will not be liable for injuries resulting.

At Law. Action for damages.
*Wheeler & Rhodes*, for plaintiff.
*James B. Stubbs*, for defendant.

SABIN, J., *(charging jury.)* This is an action by plaintiff to recover damages occasioned by the collision of his buggy against defendant's telephone pole, while driving a usually gentle horse, as alleged, which had become suddenly unmanageable by fright; plaintiff claiming that such pole or post was erected by defendant in violation of the city ordinances, and that the same was a dangerous obstruction to travel in the streets of Galveston as located. It is contended, on the other hand, that defendant had authority from the city to erect said pole or post on Church street, near Tremont, where the same is located, near the corner; that it was the frightened horse that caused the injuries for which defendant is not responsible; that, if any one is liable, it is the city, and not defendant, and, generally, denies the allegations of plaintiff, and that no liability exists when a horse becomes unmanageable from fright, and a party is injured as a result of a collision with such post or pole or any other thing with which a collision might have been had. The most of these matters are matters of law, but some mixed questions of law and fact.

All these questions have been very ably presented in your hearing by Mr. Rhodes, for the plaintiff, and Mr. Stubbs, for the defendant.

In the first place you are informed that the defendant had sufficient authority from the city, as has been *prima facie* shown, to erect the pole in question where it did, and that the main issue for you to determine, under the directions hereinafter given, is whether the post or pole in question, as erected, was a dangerous obstruction to travel on the streets of Galveston. If it was not a dangerous obstruction, it would be immaterial as to whether it was granted under the permission or direction of the city or not. If it was a dangerous obstruction to the use of the streets by the public, the city could not lawfully grant it so as to debar an injured party from recovering any damages which he might sustain in consequence of its erection. A city itself cannot place a dangerous obstruction to travel in its own streets, or suffer it to be done, without liability; and where it gives the permission for such an act to be done by a third party, and it is so done, each and both are liable.

Again, where a party has a horse and buggy hitched or standing securely in the public street, and another party unhitches and turns it loose, and the horse becomes frightened and runs away and breaks the buggy and injures the horse by his running against some object which another or third party has unlawfully placed in the street, permanently or otherwise, and of a dangerous character to ordinary travel, such third party is in no wise liable for any injuries that result therefrom. Such damages can only be looked for from the party who improperly unloosed the horse or caused the fright, he being the proximate cause of such damage.

But where a party is engaged in driving a gentle horse and buggy on the public streets, as he lawfully may, and the horse becomes frightened from any cause, or becoming unmanageable, and such party still remains in the buggy, using every effort in his power to guide and manage him, and to subdue him, and take him to his destination as he lawfully may, and while so engaged, if he unwittingly strikes some fixed and permanent object of a character dangerous to the safe travel of the public, located in a public street, and suffers damage thereby, he may recover such damages from the party placing such dangerous object in the street, or from any one aiding, assisting, or permitting the same to be done, and while he may so recover against either or all, he can have satisfaction of but one judgment. On the other hand, had such party abandoned his buggy before such collision, then, and in such case, he could not have recovered. The law of the public street is like the law of the sea,—it is the right to move on, the right to pass to and fro, without let or hinderance, other than such temporary stoppages in transit as are incident to the business of travel.

Again, when a public street has been once lawfully opened and has become a public highway, the sovereign power may abolish it or change it, but there is no power, except in time of war or public calamity, that can lawfully authorize the permanent erection of an obstacle dangerous in its character to the persons or property of the public in traveling to

and fro therein. The grant of a permit or direction to locate a pole or post in a street extensively used by the public as a general thoroughfare, both for pleasure drives and business vehicles, in order to be a valid grant, or to be rightfully there, must not only be in accordance with the authority ordinarily conferred by statutes and ordinances, but must also be made subject to the determination of a jury as to whether the pole or post so located is in point of fact dangerous to the public in the use of such street, including all the contingencies incident to the lawful use of the same. Hence, where corporations or individuals undertake to make use of public streets or highways for their individual purposes, however meritorious, and cities undertake to give them the right so to do, and to regulate the same, each and every of them should always bear in mind that the power of the country lodged in its courts and juries, to hear and determine whether such concessions or regulations and use or occupation of the streets have been made in accordance with the public safety, has never been taken away. If such concessions are dangerous, no grant can be valid. If they are not dangerous, the power and control of the city is complete, and its action would be entirely valid in the premises, and should be respected by both courts and juries. But the right of the people to have any act injurious to them or affecting the lives, health, liberty, safety, or property of individuals considered and determined by their courts and juries will never be surrendered or abandoned by them as long as their liberties remain.

Having thus discussed the general questions presented in the case, and argued in your presence by the able counsel herein, I will now proceed to give you the directions specifically which will govern you in making up your verdict. In the first place, on your retirement, you will look over these directions hereafter given, and comprehend the same, and in the next place proceed to the consideration of the evidence in the case. If, therefore, gentlemen of the jury, you shall find from the evidence that the plaintiff herein sustained the injuries complained of by striking the hind wheel of his buggy against a post or pole of defendant permanently erected in the public street in which plaintiff was traveling, while driving a horse which, while ordinarily gentle, had become suddenly unmanageable from fright while *en route,* and that such pole, as erected, was a dangerous obstruction to the safe travel of the public upon that street, and that plaintiff was then and there in his buggy driving and endeavoring to subdue his said horse as best he could in the then frightened and unmanageable condition of the said horse, and endeavoring to take the same to his place of destination, at the time of the collision complained of, then, and in such case, you will find a verdict for the plaintiff in such sum as will amply compensate him for his injuries and sufferings, physical and mental, caused by such collision with such pole or post. But, on the other hand, if you shall find from the evidence that such post or pole as erected was not dangerous to the traveling public, but was consistent with their safety in the daily use of the street, or, in other words, was not a dangerous obstruction to the use of the said street by the public; or that the plaintiff, by the use of ordinary prudence and

care, might have avoided the collision, then, and in either of such cases, you will find for the defendant.

The jury found for the plaintiff in the sum of $4,200.