## LUMAN C. WOODRUFF V. WILLIE A. WALLACE.

1. PUBLIC LAND—*Rights of Settlers—Jurisdiction of District Court.* District courts of this territory have jurisdiction to enquire into the right of possession as between settlers upon public land. And where it appears that the rights of adverse claimants have been adjudicated by the land department, and the homestead entry of one of the parties has been cancelled, *held,* that the district court may, by injunction, give exclusive possession to the person who was successful in the contest proceedings.

2. POSSESSION—*Remedy.* The forcible entry and detainer act of this territory does not provide an adequate and speedy remedy to a person who is entitled to the exclusive and immediate possession of land covered by his homestead entry.

3. MANDATORY INJUNCTION. It is the duty of the courts, when called upon, to issue an injunction, mandatory and prohibitory, to restrain a person whose homestead entry has, by the land department, been cancelled, (1) to compel such party to yield up and surrender possession of land, and (2) to prohibit him from interfering with the possession of the person who has the homestead filing for such and.

4. OCCUPYING CLAIMANTS—*Act Not Apply, When.* The occupying claimants act, passed by congress June 1, 1874, has no application to land until the title to the same passes from the government of the United States.

5. TITLE—*Homestead Filing.* A homestead filing does not convey "color of title" within the meaning of the act of congress of June 1, 1874.

6  HOMESTEAD ENTRY—*Cancelled for Fraud.*  A person whose home-
   stead entry has been cancelled for fraud in its inception cannot avail
   himself of the benefits of the occupying claimants act.

*Error from the District Court of Oklahoma County.*

The opinion sufficiently states the facts.

*Grant Stanley*, for plaintiff in error.

*J. H. Everest*, for defendant in error.

The opinion of the court was delivered by

DALE, C. J.: This is a case upon appeal from the
district court of Oklahoma county, and from the
pleadings it appears that Willie A. Wallace, plaintiff
below, filed in the district court, his petition for an
injunction, wherein he alleged, in substance, that he
is the homestead entryman for the southeast quarter
of section 34, township 12, north of range 3 west, in
Oklahoma county, having made homestead entry
thereon February 13, 1895.  That Luman C. Woodruff,
defendant below, formerly had a homestead entry on
the tract of land, and that said Woodruff is continuing
to reside upon, use and occupy the entire tract, to the
exclusion of said Wallace; that the homestead entry
of said Woodruff was, prior to the institution of suit,
cancelled by the commissioner of the general land
office, under the authority and direction of the secre-
tary of the interior, on the 9th day of February, 1895;
that such cancellation was the result of a contest in-
stituted by said Wallace against said Woodruff; that
in the contest affidavit, filed as a basis for said con-
test, it was alleged that said Woodruff violated the
act of congress, approved March 2, 1889, and the
president's proclamation of March 23, 1889, relative
to the Oklahoma lands, of which the tract in question
is a part, by entering upon said lands prior to noon of
April 22, 1889.  And it is further alleged that after

the entry of Woodruff was cancelled, and the entry of Wallace was made upon the land, Woodruff refused to vacate the premises and refused to permit Wallace to use or occupy any portion of the land so filed upon by said Wallace. Wallace also alleged that he had no adequate remedy at law, whereby he could obtain possession of the tract of land in controversy, and further alleged that under the laws of congress it was incumbent upon him to reside upon and improve the tract of land in order to maintain the validity of his homestead entry. In the petition Wallace asked that a mandatory injunction be issued, compelling Woodruff to vacate the premises and restraining him from further trespassing upon the land in controversy.

Attached to the petition appear copies of the decisions of the commissioner of the general land office, and the secretary of the interior, which decisions fully state the issues tried in the contest proceeding before the land department, showing that the entry of Woodruff was cancelled by reason of the contest proceedings instituted by Wallace, and that Wallace had been awarded the preference right of entry to the tract of land. Also appears as an exhibit, a copy of the receiver's duplicate receipt, showing that Wallace had filed his homestead entry in the Oklahoma City land office for the tract in question.

To such petition Woodruff first filed a demurrer. The record does not disclose what action was taken by the court upon the demurrer. The record further shows that Woodruff filed his answer wherein he denied that he entered upon and occupied a portion of Oklahoma lands prior to the hour of 12 o'clock, noon, of April 22, 1889, contrary to law, also denied that his entry was ever cancelled by any court of competent jurisdiction; also denied that the plaintiff had no adequate remedy at law, and as an additional and further

defense alleged that he settled upon the land after noon of April 22, 1889, and on the 25th day of April, 1889, filed in the United States land office his homestead entry for such tract of land and received the receiver's duplicate receipt therefor; and further alleged that he had resided upon and improved the tract of land from the time of his settlement until the date of the institution of this suit in the court below; that during such time he had broken a portion of said land and cultivated the same, erected a house and barn and other improvements thereon, and that the value of said improvements was of the sum of one thousand dollars, and that by reason of such filing, entry and improvements, he acquired an equitable title in the tract of land, and under color of such title, alleged that he was entitled to the benefit of the occupying claimants act, and also alleged that the cancellation of his entry was procured by fraud and perjury, and that such cancellation was illegal and void, and that he is in no manner divested of his rights and equities in the said tract of land by reason of the pretended and fraudulent cancellation of his entry, and that he is entitled to be reimbursed by the plaintiff for the money expended by him in placing a house and making the improvements upon the land aforesaid.

A demurrer was filed to the answer of the defendant and was by the court below sustained, and the injunctional order issued restraining the defendant below from trespassing upon or interfering with Wallace in the use or occupancy of any portion of the tract of land, and requiring Woodruff to remove entirely from the tract of land within sixty days from the date of the order, and permitting Woodruff, within said sixty days, to remove from the land all of his buildings, fences and portable personal property. From such order the defendant below appealed to this court, and, by his assignments of error, and under the pleadings

in this case, there is fairly raised for our consideration three propositions:

1. It is contended that the legal title to the land, being in the United States, the court below had no jurisdiction over the subject matter.

2. That the plaintiff below had an adequate remedy at law, and the mandatory injunction ought not to have been issued.

3. That the Act of Congress of June 1, 1874, put into effect the territorial occupying claimants law, and the court below had no power to dispossess the plaintiff in error until the value of his improvements had been determined and paid for.

The first contention raised by plaintiff in error has heretofore been passed upon by this court in *Sproat v. Durland*, 2 Okla. Rep. 24; 35 Pac. 682, and in *Peckham v. Fought*, 2 Okla. Rep. 173; 37 Pac. 1085, wherein it was held that "the courts of this territory have jurisdiction in matters relating to the possession of lands covered by homestead entries when the title to the same remains in the United States. That it is the duty of the courts to inquire into the status of parties claiming the right to reside upon public lands far enough to determine whether or not such parties are there in pursuance of some law of congress giving such right; and if it be found that, under the laws of congress relating to the disposition or public lands, there are parties upon lands, claiming adversely, one of whom may have the right of occupancy and possession, and the other have no such right, then it is the plain duty of the courts to award possession and occupancy to the one whom congress intended should have such right." We thought we were sufficiently explicit in laying down the rule within which a court may act, but inasmuch as the question is still in dispute, we will again discuss the matter.

In the case under consideration it appears that

Woodruff, on April 22, 1889, settled upon the tract of land in controversy, and on the 25th of said month filed his homestead entry therefor. That Wallace instituted a contest against the entry of Woodruff, alleging that said Woodruff was disqualified to enter the land by reason of having entered upon and occupied the land described in the act of congress approved March 2, 1889, and opened by the proclamation of the president, dated March 23 following, prior to 12 o'clock noon of April 22, 1889, and that such entry was contrary to law and the terms and provisions of the president's proclamation aforesaid. The contest proceeding so instituted resulted favorably to Wallace, and the entry of Woodruff was by the land department cancelled, and Wallace filed his homestead entry therefor, and at the time these proceedings were begun in the court below, all matters, so far as affecting the status of the parties in the land department of the United States, were *res adjudicata.* We presume it will not be questioned that congress, at the time it passed the law opening these lands to settlement, had the right to prescribe the rules and regulations under which the same might be lawfully entered by homestead claimants. That question has been finally put at rest by the decision of the United States supreme court in the case of *Smith v. Townsend,* 148 U. S. 490, and if, as alleged in the contest affidavit of Wallace, Woodruff violated the act of congress opening these lands to settlement, then the decision of the land department cancelling his entry was a proper decision and entirely within the jurisdiction vested in the land department by congress.

Congress has also provided the manner of determining the rights of persons where more than one party claims the same tract, and such determination is had by contest proceedings, instituted in the local land office, with the right of appeal from such tribunal,

first, to the commissioner of the general land office, and from such officer to the secretary of the interior. The facts as ascertained by the land department are binding upon the courts everywhere. (*Johnson v. Towsley*, 13 Wall. 72; *Marquez v. Frisbie*, 101 U. S. 473; *Lee v. Johnson*, 116 U. S. 48, and the numerous cases cited in such decisions.)

The land department, therefore, having held that Woodruff has no rights in the land in dispute, by reason of the disqualification of said Woodruff to acquire any right or title in said land, it then becomes the duty of the courts to give effect to such decision, unless the land department has misapplied the law.

Let us see if we may not be able, with some degree of accuracy, to determine the relative rights to the possession of the tract of land in dispute between Wallace and Woodruff. Now what right, by virtue of his homestead filing, had Wallace? It has been repeatedly held that a homestead entry segregates the land, and, such being true, it must follow that the government parted with something at the time of the entry. If, before the entry, the land was public domain, after the entry, it ceases to have that character. To what extent did the government part with its interest? Before entry, the entire title, both in the land and in the possession, was in the United States; after the entry, one of the elements of title, to-wit: possession, had been parted with, so long as such entry remains of record. Did the government reserve to itself any part of the possession? Clearly not; because, upon the filing of the homestead entry, a contract was entered into, binding upon the government to the effect that, presuming the entryman was one of the parties designated as qualified to homestead land, the government agreed to convey, by patent, if the party filing should, for a period of five years, reside upon and cultivate the land. Thus, it must appear as an

irresistible conclusion, that, conceding the qualification of a homestead entryman, all right of possession passes from the government when the filing is made, and that such right does not again inhere until, by reason of fraud in making the filing, or the establishment of a superior right in another, the entry is cancelled.

We think, perhaps, much of the uncertainty and doubt which surrounds this question grows out of the inaccurate use of terms. We are wont to speak of the United States as holding the title, and of the settler being in the attitude of having an inchoate title, equitable interest, or possessory title or right in the land. It may aid us some to notice this subject more closely and determine, if we can, the degree of title which a homestead filing confers. Blackstone, 2d Book, ch. 13, in defining title, says:

"It is the means whereby the owner of lands hath the just possession of his property."

And, following, in an analysis of title, which seems to have been universally accepted as correct, further states:

"There are several stages or degrees requisite to form a complete title to lands and tenements. 1. The lowest and most imperfect degree of title consists in mere naked possession, or actual occupation of the estate, without any apparent right or any shadow or pretence of right, to hold and continue such possession. * * * And until some act be done by the rightful owner to divest this possession and assert his title, such actual possession is *prima facie* evidence of legal title, in the possessor. 2. The next step to a good and perfect title is the right of possession, which may reside in one man, while the actual possession is not in himself but in another. 3. The mere right of property, the *jus proprietatas*, without either possession or even the right of possession. * * * 4. A complete title to lands, for it is an ancient maxim of law that no title is completely good unless the right

of possession be joined with the right of property.
*   *   *   And when to this double right, the actual
possession is also united   *   *   then and then only is
the title completely legal."

Under these definitions, may we not accurately de-
termine the title with which a person holds a tract of
land where it is covered by his homestead entry? The
United States retains the mere right of property, the
*jus proprietatas*, without possession, or the right of
posession. This must be true, as the United States
could not, if the homestead entryman be qualified, dis-
posses such entryman, as he is in no sense a trespasser,
and under the provisions of the homestead law, the
United States has stipulated with him that he may
maintain his possession, and if he shall so maintain it
for five years, it is further stipulated that he shall re-
ceive a patent. It seems clear, then, that a person
holding an uncancelled homestead entry upon land
has a good and legal title in the possession, and a
contingent title in the patent.

The next question which we naturally come to in a
discussion of this feature of the case, is, how may a
person holding a homestead entry lose this right of
possession? This question is easily determined. At
the time a claimant presents his application to enter
a tract of land, he is required to accompany the same
with an affidavit wherein he undertakes to the United
States, to the effect, that he has certain qualifications,
and which qualifications must exist as a condition
precedent, before he can, under the laws of congress,
acquire, as a homestead, any of the public domain.
If he is possessed of these qualifications, he is per-
mitted to file his entry upon any land which appears
upon the records of the local land office to be unap-
propriated. As before shown, this filing carries with
it, as against the United States and against all per-
sons, *prima facie*, the right of possession, and the con-

tingent right to patent. But these conditions may be overcome by either fraud in making the entry, or by the showing of an adverse party claiming under the settlement act of May 14, 1880. Under the charge of fraud, the government or a private individual may allege that the entryman did not possess the prerequisite qualifications to enter the land, and if such fact be established, the entry is cancelled. Under the settlement act, a party may allege a right to the land, which existed prior to the time of the filing of the entry, and if such fact be proved, the entry is cancelled. The result of the cancellation upon either charge is the same. The contract with the government is at an end. The moment the entry is cancelled, the land reverts to the government as completely as if no entry had ever been made. No more rights remain in the individual whose entry has been cancelled than would exist if his entry had never been made; he stands in the same relation towards the land as he would in any other matter wherein he had contracted, and such contract had been revoked, or completely rescinded.

In this case Woodruff lost, not only his possessory right to the land, but his contingent interest in the patent. at the time his entry was cancelled. As we have sought to show, a valid homestead entry carries with it the right of possession as against other individual claimants, and as against the government. It must follow, then, that the courts have jurisdiction to the extent to which the government has parted with its title. For if the homestead entryman, having a valid entry, shall comply with the law relative to residence and cultivation for the prescribed period, and the government should refuse to execute to him its patent, the courts would, upon application, make the contingent title which he holds under his filing absolute, by compelling the government to comply

with its contract entered into at the time of filing the homestead entry. Thus it is seen that what the government parts with, that is, the possession and contingent interest in the patent, the courts at once acquire jurisdiction over.

The distinction we here make is not entirely new and wholly without authority. One of the leading cases cited as against this doctrine is *Marquez v. Frisbie*, 101 U. S. 473. In that case the right of title only was involved. All the cases theretofore decided by the supreme court of the United States, relating to the right of a court of equity to deal with the question of title to public land, prior to the time the United States had parted with its title, were considered, and a conclusion reached that, in a suit to declare a person who has been awarded the right to enter land, a trustee for the benefit of one claiming by a superior equitable title therein, the court will not act, unless the legal title has passed from the government. This is the language of the court in that case:

" It plainly appears from this, first, that defendant has not legal title; second, that it was in the United States, and third, that the matter was still *in fieri*, and under control of the land officers. ' * * * We have repeatedly held, that the courts will not interfere with the officers of the government in their duties in disposing of the public lands, either by injunction or *mandamus.*"

Speaking further, the same opinion says that it would be equally objectionable to permit a state court to so act. The opinion here quoted from and others of like import are cited and relied upon to support the view of appellant. A careful reading of each case will show that the question of the right of possession was not considered, but only the subject matter of the title. And if any further evidence of that fact was needed, the case of *Marquez v. Frisbie, supra,* fur-

nishes the proof.     After citing authorities supporting the principle announced in that case, we find the following language used :

"We did not deny the right of the courts to deal with the possession of the land prior to the issue of the patent, or to enforce contracts between the parties concerning the land.     But it is impossible thus to transfer a title which is yet in the United States."

Clearly this opinion, so largely relied upon, cannot be treated as supporting the doctrine contended for. In the very nature of things, the courts must have the power to deal with the question of possession as between homestead claimants.     Congress has in no way reserved such question, and all matters of dispute or litigation must abide in some court having the power to deal with the subject.

It has been repeatedly held that where one enters by force upon the possession of another, claiming under either a homestead or pre-emption filing, the courts will, upon application, restrain such party from such interference.     This was the rule laid down in *Atherton v. Fowler*, 96 U. S. 515.

And, as bearing upon the question of the duty of the courts to take jurisdiction as to the question of possession, between claimants on public lands, we call attention to, *U. S. v. Cleveland & Colorado Cattle Co.*, 33 Fed. 322; *U. S. v. Brighton Ranch Co.*, 25 Fed. 465, and 26 Fed. 218; *Webster v. Cooke*, 23 Kan. 637; *Downing v. Reeves*, 24 Kan. 167; *French v. Cresswell*, 11 Pac. 62 (Oregon); *Lyman v. Todd*, 22 Pac. 103 (Kansas); *S. W. R. Co. v. Johnson*, 16 Pac. 125 (Kansas); *Barden v. N. P. R. R. Co.*, 145 U. S. 535.

The second assignment of error brings into discussion the question as to whether or not an adequate remedy at law is provided whereby the relief may be had.     The order of injunction issued in this case is in its nature prohibitory, as well as mandatory.

It operates to restrain appellant from a further interference with appellee in the use and possession of the land, and also directs him to remove from the land and surrender possession, only permitting him to go upon the tract for the purpose of removing such improvements as might be taken off the land without injury thereto. It is contended that the order was improvidently issued, because the party seeking the same had an adequate remedy at law by the forcible entry and detainer act. And, second, that no authority in law exists for a mandatory injunction in this character of proceedings. It will at once appear that the contention that an action by forcible entry and detainer will lie, is inconsistent with the argument that the courts have no jurisdiction in this case. The right to proceed by forcible entry and detainer is predicated wholly upon the theory that the question of possession is one with which the courts of the territory may deal. The law was passed by the territorial legislature and is based upon the assumption that the jurisdictional power is in our local courts. But however that may be, conceding that an action under the forcible entry and detainer act will lie, is such a remedy adequate to afford proper relief? Under the homestead law Wallace was granted the immediate right to the exclusive possession of the land from the time his filing was placed of record in the local land office. As we have before stated such right inhered in him by virtue of his filing. In order to comply with the requirements of the homestead law, it became necessary to reside upon and cultivate the land. A failure so to do would forfeit his right, secured by his filing, and might result in a loss, to him, of the land. A suit instituted under the forcible entry and detainer act must be instituted before a justice of the peace, and a judgment favorable in such tribunal may be appealed from, and a defendant in such action, upon

giving bond, may still retain exclusive possession until the matter can be heard in the district court. And a judgment granted in the district court may also be stayed pending an appeal to the supreme court. And during all this time a party who, under the laws of congress, is clearly entitled to possession, is kept from exercising such right by a person who, under such laws, and as disclosed by the pleadings, has no right whatever in the land. Possibly the bonds given to stay the judgments of the justice of the peace and the district court may compensate him pecuniarily, but even then it would require numerous suits, and would be a very slow remedy to obtain a right which cannot be seriously disputed. But if we concede that he may obtain possession of the land as suggested by counsel for appellant, there yet remains a serious objection against resorting to such remedy in this character of a case. Under the law of congress, § 2297, R. S. U. S., every person who files a homestead entry is compelled to begin a residence upon and cultivation of the land within six months from the date of his filing. A failure in this respect subjects the filing to a contest. In this territory, by the orders of the supreme court, but two terms of court are held in each county in each year, and but two sessions of the supreme court are held in the same length of time. To say that an adequate remedy at law exists under such conditions as will afford proper relief in this character of a case is absurd. Injunction is the only process that will afford relief, and even such remedy is not entirely adequate because, under our statute, an appeal will lie from an interlocutory order. But it is the best and speediest remedy which may be had, and because it may not afford all the relief a party seeking its aid may be entitled to, is no reason for withholding the remedy. All authorities hold to the view that courts should in all cases grant relief by injunction, where the remedy

at law is either insufficient or is not speedy enough to afford proper protection. (High on Injunction, §§ 12 and 30; Tiedeman on Eq. Jur. §§ 478, 479, 480, 483; Spelling on Extraordinary Relief, § 13; *Walker v. Armstrong*, 2 Kan. 198; *Webster v. Cooke*, 23 Kan. 637; *Downing v. Reeves*, 24 Kan. 167; *Long v. Kasebeer*, 28 Kan. 226.)

It is also earnestly contended that in no event will a mandatory injunction lie in a case of this character. In *Sproat v. Durland*, *supra*, this court discussed, to some extent, the question of a mandatory injunction, and held to the view that injunction, being a proper remedy, the remedy should extend as far as the necessities of the case demanded. The authorities since examined confirm the doctrine then announced. High on Injunction, § 360, lays down this rule. And in a note to such section will be found the following by Hason, chancellor:

"An injunction for possession is not a new thing in a court of equity. It has long been used in England; it is directed in certain cases by the aforesaid act of assembly, and it would disgrace our laws and administration of justice if, after title to land has been established by the adjudication of a court, there could be no way of obtaining possession but after obtaining judgment in ejectment."

And speaking further in the note, the following authority is cited:

"And it is said by an eminent jurist that: 'Courts of equity also interfere and effectuate their own decrees in many cases by injunctions, in the nature of a judicial writ or execution, for the possession of the property in controversy; as, for example, by injunctions to yield up, deliver, quiet or continue the possession. Indeed, they have been distinctly traced back to the reign of Elizabeth, and Edward the Sixth, and even to Henry the Eighth. In some respects they bear an analogy to sequestrations." * * * (2 Story's Eq., § 959.)

In *U. S. v. Brighton Ranch Co.*, *supra*, the United States sought to compel parties to remove a fence which

enclosed public lands and which also included within their boundary lines lands covered by homestead, pre-emptions, and timber culture entries. Mr. Justice Miller awarded a mandatory injunction and compelled a removal of the fences and prohibited the building of fences in the future. The same conclusion was reached by Mr. Justice Brewer in a case involving the same parties and subject matter. (26 Fed. 218. *supra.*) Again, in *Wilson v. Rockwell*, *supra*, Mr. Justice Brewer announces as a correct principle that "a party show-ing an equitable title to realty will be protected by injunction against trespassers, though the legal title has not been finally determined." And, in *Jackson v. Jackson*, 19 Pac. 847, the supreme court of Oregon held that "injunction will lie to give a person hold-ing a pre-emption declaratory statement possession as against a trespasser."

It may, we think, be safely asserted that a court should in all instances, where no adequate remedy at law exists, afford relief by injunction. It is a remedy which will readily adapt itself to meet any exingency which may arise between parties who are in litigation. The only inquiry which a court need make is, has the court jurisdiction of the parties and subject matter of litigation, and is there a speedy and adequate remedy at law? If the jurisdiction obtains and the law has not provided a proper remedy, the court should unhesi-tatingly act, by injunction, to the full extent neces-sary for the protection of the parties.

The last question for consideration in this case grows out of the contention of plaintiff that the court below erred in attempting to divest appellant of the land in controversy without giving to him the benefit of a trial under the occupying claimants act. It is urged that the Act of Congress of June 1, 1874, operates to give to a person who has made improvements upon land covered by his homestead entry the status of an

occupying claimant, under the laws of the territory. The act of congress referred to is as follows:

"That when an occupant of land, having color of title, in good faith, has made valuable improvements thereon, and is, in the proper action, found not to be the righful owner thereof, such occupant shall be entitled in the federal courts to all the rights and remedies, and, upon instituting the proper proceedings, such relief as may be given or secured to him by the statutes of the state or territory where the land lies, although the title of the plaintiff in the action may have been granted by the United States after said improvements were so made."

The statutes of this territory have an occupying claimants act (see Statutes of Oklahoma, p. 865,) which, in effect, provides for an adjudication of the right to compensation for improvements made by an occupying claimant. The first section of the act is sufficient to show its purpose, and reads as follows:

"(4498) SEC. 620. In all cases, any occupying claimant, being in quiet possession of any lands or tenements for which such person can show a plain and connected title, in law or equity, derived from the records of some public office, or being in quiet possession of and holding the same by deed, devise, descent, contract, bond or agreement from and under any person claiming title as aforesaid, derived from the records of some public office, or by deed, duly authenticated and recorded, or being in quiet possession of, and holding the same, under sale on execution or order of sale against any person claiming title as aforesaid, derived from the records of some public office, or by deed, duly authenticated and recorded, or being in possession of and holding any land under any sale for taxes authorized by the laws of this territory, or any person or persons who have made a *bona fide* settlement and improvement, which he, she or they still occupy, upon any of the Indian lands lying in this terrritory, or any lands held in trust for the benefit of any Indian tribe at the date of such settlement, or which may have heretofore been Indian lands, and which were vacant and unoccupied at the date of

such settlement, and where the records of the county show no title or claim of any person or persons to said lands at the time of such settlement; or any person in quiet possession of any land, claiming title thereto and holding the same under a sale or conveyance made by executors, administrators or guardians, or by any other person or persons, in pursuance of any order of court or decree in chancery, where lands are or have been directed to be sold, and the purchasers thereof have obtained title to and possession of the same without any fraud or collusion on his, her or their part, shall not be evicted or thrown out of possession by any person or persons who shall set up and prove an adverse and better title to said lands, until said occupying claimant, his, her or their heirs, shall be paid the full value of all lasting and valuable improvements made on said lands by such occupying claimant, or by the person or persons under whom he, she or they may hold the same previous to receiving actual notice, by the commencement of suit, on such adverse claim by which eviction may be effected."

Subsequent sections provide for the calling of a jury to assess separately, the value of the land and improvements, the damages by reason of waste, and the value of the rents and profits which the occupying claimant may have received, and further provide for the payment of the award to the occupying claimant, or in case that the true owner of the land does not desire to pay the sum so awarded, he may tender a deed to the land and the occcupying claimant may pay to such owner the sum assessed as the value of the land without the improvements, and thereby obtain title to the land. No eviction is allowed as against an occupying claimant until he has been paid for his improvements, provided he makes his application for such pay, until all the provisions of the act have been complied with.

It will appear at once that an attempt to enforce the occupying claimants act of this territory will meet with the very objection that has been so strenuously

urged by appellant to the effect that the courts have
no power to dispose of, or molest the title to the land,
so long as the same remains in the United States.
The occupying claimants act of this territory is pred-
icated upon the fact of title to the land being in one
of the parties to the litigation. The supreme court
of the United States has held repeatedly that a home-
stead filing does not convey title, but only passes an
interest in the land which may ultimately ripen into
one. To say that the courts of a state or territory
may proceed to sell or dispose of land belonging to
the United States, is to state a proposition which can-
not be maintained. Neither can land acquired under
the provisions of the homestead act, be liable to the
satisfaction of any debt contracted prior to the issu-
ing of the patent therefor. (Sec. 2296, R. S. U. S.)
In short, it was the intention of congress to give to
any qualified person a homestead free of all incum-
brances, of any kind whatever, and which could not
be sold for any debt which existed prior to the time of
the issuance of the patent. Neither state nor territorial
legislatures are permitted to pass laws interfering
with the primary disposal of the soil. That right has
remained in the congress of the United States. Did
congress intend to change the rule in this respect by
the passage of the law of June 1, 1874, *supra?* When
we examine closely that act, it clearly appears that
such was not the intention. The language used, "that
an occupant of land, having color of title, in good faith,"
etc., does not change the rule relating to the disposi-
tion of land under the homestead law. The party
claiming the right to invoke the benefits of the occu-
pying claimants act, must have as a condition prece-
dent, "color of title." By color of title is not meant a
homestead filing, because such filing does not rise to
the dignity of color of title. It is a certificate which,
upon its face, does not purport to give title, but is an

instrument given to designate the person who has claimed, and who is granted the right to the use and occupancy of a tract of public land. The government merely parts with the possession of the land, and not the title. This instrument does not convey color of title, and was not so intended. One of the best definitions of the phrase "color of title," is found in *Brooks v. Bruyn*, 35 Ill. 392, and as defined by that court is :

"Any instrument having a grantor and grantee and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title to the lands described. Such an instrument purports to be a conveyance of title, and because it does not, for some reason, have the effect, it passes only color, or the semblance of title. It makes no difference whether the instrument fails to pass an absolute title, because the grantor had none to convey, or had no authority in law or in fact to convey one, or whether such want of authority appears on the face of the instrument or *aliunde*. The instrument fails to pass an absolute title for the reason that the grantor was not possessed of some one or more of these requisites and therefore gives the semblance or color only of what its effect would be if they were not wanting."

And in *Wright v. Mattison*, 18 How. 56, the supreme court of the United States says:

"The courts have concurred, it is believed without an exception, in defining color of title to be that which in appearance is title, but which in reality is no title."

It is useless to quote further upon this subject as all the cases and text books seem to coincide upon the question that no person having a deed or instrument from a grantor can claim color of title except he has what purports, upon its face, to be an instrument conveying title. Measured by this rule it is readily seen that a homestead filing does not give color of title. Again, it will be seen upon an examination of our ter-

ritorial act relating to occupying claimants, *supra*, that it nowhere provides for an adjudication of rights between claimants occupying land, the title to which is still in the United States. Had our legislature attempted so to do, it would have contravened the express inhibition contained in our Organic Act, found in § 6, which reads as follows:

"That the legislative power of the territory shall extend to all rightful subjects of legislation, not inconsistent with the constitution and laws of the United States; but no law shall be passed interfering with the primary disposal of the soil."

Counsel for appellant cite, in support of their contention, *Deffenback v. Hawke*, 115 U. S. 392; *Sturr v. Beck*, 133 U. S. 541, and *Kraus v. Means*, 12 Kan. 26. These cases do not support the claim of counsel. In *Deffenback v. Hawke*, it appears that one of the parties was a settler and occupant of a townsite at Deadwood, Dak.; that, subsequent to his settlement, an entry as a mineral claim was sought to be made for a portion of such townsite. The probate judge for the county wherein the townsite was situated attempted to enter the land for townsite purposes. A contest was instituted and the land department found that the land was a mineral bearing tract of a character which could not be entered under the townsite laws, and awarded to the party claiming for mineral purposes the land located by him. Afterwards, suit was instituted in the courts to eject the party claiming as an occupant under the townsite laws. As a defense it was claimed that the land department had misconstrued the law, and the court was asked to declare the plaintiff a trustee for the benefit of defendant. As an additional defense it was asserted that the person claiming under the townsite act had made improvements upon the land of the value of $1,200, and that, outside of the improvements, the land was worth but $100, and relief was asked

under the occupying claimants act of Dakota, in the event the court found that the decision of the land department was correct, in giving a patent to the adverse party.    This suit was instituted after the act of congress of June 1, 1874, *supra.*, and the opinion of the court was delivered by Mr. Justice Field, and upon that feature of the case the learned justice said:

"It is asserted under a statute of the territory which provides that 'in an action for the recovery of real property, upon which permanent improvements have been made by a defendant, or those under whom he claims, holding color of title, adversely to the claim of the plaintiff, in good faith, the value of such improvements must be allowed as a counter-claim by such defendant.' The case presented by the plaintiff is not covered by the provision of this law. There can be no color of title in an occupant who does not hold under any instrument, proceeding, or law purporting to transfer to him the title or to give to him the right of possession. And there can be no such thing as good faith in an adverse holding where the party knows that he has no title, and that, under the law, which he is presumed to know, he can acquire none by his occupation."

In *Sturr v. Beck, supra,* the case turned upon the proposition that a homestead filing, which ultimately ripened into a patent, carried with it, from its inception, the entire use and occupancy of the land, and excluded the right to divert water, which right was sought to be initiated subsequent to the filing and prior to final proof.

In *Kraus v. Means, supra,* we will give the language of Mr. Justice Brewer, who wrote the opinion, relative of the character of the action:

"The title to this land passed from the government to Julia Goodell. She conveyed by a deed, regular in form and apparently valid, and from her grantee Kraus obtained his title. The defect in the title does not appear on the records or conveyances, but arises from a disability to convey in Mrs. Goodell. It seems

to us this is a plain and connected title derived from
the records of some public office, and therefore brings
Kraus within the first clause of the statute. Of
course the words, "plain and connected title," as used
here do not import a perfect title; for he who holds by
such has no need of the occupying claimants act. It
implies a defective title, and refers only to the appear-
ance of the record. It applies to a case like the one
at bar, when, though there be a regular succession of
conveyances, there is a disability in some grantor
which prevents the title from actually passing."

It afterwards transpired that Mrs. Goodell had no
power to convey under the treaty which assigned to·
her the land, and that, after the disability was
removed, she again conveyed the land to one Means,
who instituted suit in ejectment, and as against Means,
the court very properly held that Kraus was entitled
to the benefits of the occupying claimants act, Mrs.
Goodell having parted with her entire interest. The
state courts having jurisdiction, the laws of the state
relative to occupying claimants would attach. But
counsel for Means strongly contended that to allow
Kraus the benefits of the occupying claimants act
would, in effect, defeat the act of congress, which
conveyed to Mrs. Goodell. And in speaking to that
question, the learned justice said:

"It may be conceded that neither the title nor
possession of the Indian owner, secured by treaty with
the United States government, can be disturbed by
state legislation; and if Mrs. Goodell were plaintiff in
the action, seeking to recover possession, it is prob-
able she would be entitled to both land and improve-
ments (though as that question is not before us we do
not decide it.")

The language is significant as showing that what-
ever disposition the government seeks to make of its
·lands, the courts must uphold. And that, too, no mat-
ter what the conditions of the grant may be. But
there is another feature of this case, which in our

judgment effectually disposes of the claim of defend-
ant.    Under the act of congress opening these lands
to settlement, approved March 2, 1889, there is a pro-
vision which reads as follows:

"But until said lands are opened for settlement by
proclamation of the president, no person shall be per-
mitted to enter upon and occupy the same and no per-
son violating this provision shall ever be permitted to
enter any of said lands or acquire any right thereto."
(See St. of Okla. p. 32, § 58.)

This  act  has  received  judicial  construction  in
this  territory  (1  Okla.  117,)  and  by  the  supreme
court of the United States (*Smith v. Townsend*, 148 U.
S.    490,)  and  it  is  now  well  settled  that  persons
within the boundaries of this territory at the time the
same was opened to settlement can acquire no rights
whatever in land from the United States.    As exhibits,
attached to the petition filed in the case in the court
below,  and  now  part  of  the  record  before  us,  we
find  that  in  the  contest  proceedings  instituted  by
plaintiff below, in the local land office, that appellant
was charged with being disqualified to enter lands in
Oklahoma, by reason of the fact that he entered and
occupied the land prior to the time fixed in the procla-
mation  of  the  president  for  the  settlement  of  these
lands.    We also note that the land department has
found such charge to be true, and upon such finding
cancelled appellant's homestead filing.    Such a find-
ing is binding upon the courts.    (*Johnson v. Townsley*,
13 Wall. 72; *Marquez v. Frisbie, supra.*)

We are, in the face of this fact so found, precluded
from holding that the appellant, in good faith, made
improvements upon this land.    And how pertinent to
this case is the language of Mr. Justice Field, in ·
*Deffeback v. Hawke, supra*, in speaking of a person
claiming to have, in good faith, made improvements
upon public land:

"And there can be no such thing as good faith, in an adverse holding, where the party knows that he has no title, and that, under the law, which he is presumed to know, he can acquire none by his occupation."

It seems unnecessary to carry this discussion any further. We are of the opinion that the appellant cannot obtain the benefits of the occupying claimants act, and that the court below committed no error in this case.

The judgment of the court below is affirmed.

Scott, J., having presided at the trial below, not sitting.

Burford, J.: I concur in all the conclusions reached in this case, but some of the reasonings do not meet my entire approval.

Bierer, J., and McAtee, J., dissenting.


Dissenting opinion by

BIERER, J.: In my view of the law, this is another extension by this court of the proceeding by injunction to a class of cases in which neither the law or equity ever contemplated it should be invoked, and as each encroachment is made by this so-called equity jurisdiction upon legal remedies, I feel it my duty to dissent from the action taken.

I am not convinced either by the argument made, or the authorities cited, by the court, that injunction is a proper remedy by which to dispossess one who is in the peaceable, and hitherto, rightful, possession of land. I have never questioned the right of one homestead occupant to employ the remedy by injunction to restrain any interference with his possession, either on the part of another claimant or any other person, but I have denied that the homestead entry vested in the entryman the right to enjoin from the land covered thereby, one who, by any form of contest, was claim-

ing the better right to acquire the government title to the land; and particularly did I deny this in a case where the contestant was claiming settlement prior to the contested entry, and where he had also alleged by affidavit, duly corroborated, that the entryman had committed a violation of the law, the penalty for which was prescribed to be that no violator thereof "shall be permitted to enter upon and occupy the same, and no person violating this provision shall be permitted to enter any of said lands, or acquire any right thereto," (*Sproat v. Durland*, 2 Okla. Rep. 24; 35 Pac. 886), and I now deny that a homestead entry, or any other form or degree of claim to land either inchoate, legal, or equitable, entitles the holder to supercede the clear legal remedies and convert the order of injunction into a writ of ouster by which a person, theretofore in the peaceable and rightful possession of land, may be ejected from the same without any other form of trial than an address to the broad discretionary power of a judge of a court of equity. The right of Willie A. Wallace to invoke the aid of the strong arm of a court of equity to prevent Luman C. Woodruff from interfering with him in his right to peaceably settle on, reside upon, and cultivate the land covered by his homestead entry, (*Peckham v. Faught*, 2 Okla. Rep. 173; 37 Pac. 1085,) does not give him the right to use the same strong arm to throw Woodruff from his home, eject him from his cultivation, and tear down his improvements. Before this latter relief can be had Woodruff is entitled to a .trial in a legal proceeding, and before a jury of his countrymen, and this right is not taken away by any adjudication of any land tribunal. It existed before land tribunals were heard of, and will likely exist after they are forgotten, and I am opposed to this court being the first to take it away. Possession and right of possession are not synonomous, either in language or law, and it is a

mistaken understanding of our procedure to hold that the remedy for the protection of the former against intrusion is the appropriate relief for the enforcement of the latter against one in actual possession.

In the cases cited, not only had the parties restrained not been in the prior rightful possession of the premises, as Woodruff is admitted to have been, but in none of these cases were the parties enjoined from their actual possession of the land, consisting either of residence or cultivation, but the restraint was made against acts which interfered with the occupancy of the complainant, and did not disturb the actual possession of the person enjoined, and the paragraphs quoted from the text writers are concerning entirely different principles than those which must govern a case like the one at bar.  Consequently, I cannot regard the authorities referred to as giving any weight to the decision of the court.  If any one of the Kansas decisions cited by the court· was in point, or justified the conclusion reached, I would be willing to admit that the procedure had the Code to support it, as our legislature has adopted the Kansas practice as an entirety, both for the district and justice courts, and I am a firm adherent to the doctrine that the construction given before its ·adoption to an adopted statute is as much a part of the law as if it were written in the sections.  (*Cathcart v. Robinson*, 5 Peters, 364.)  And if any·of the Kansas decisions approved the procedure of ejecting a man from his home and his fields because he had lost his property therein, by an injunctional order, I would concede that Wallace had adopted his proper remedy, under the language of the statute, but I would still doubt the constitutional power of the legislature to enact such a law.

A brief examination of the Kansas cases cited will, I think, disclose the correctness of my statement that they are no authority whatever for the conclusion of

the court in this case. The case of *Walker v. Armstrong*, 2 Kan. 198, was a proceeding brought to restrain the defendants from encroaching upon a ferry franchise claimed by the plaintiff under an act of the legislature of the territory of Kansas, and the court, by Mr. Chief Justice Cobb, said:

"An injunction is the appropriate remedy to protect a party in the enjoyment of a ferry franchise against continuous encroachments. Sush continuous encroachments constitute a private nuisance which courts of equity will abate by injunction."

That injunction is an appropriate remedy to abate a nuisance, has long been the undisputed law; but this is the first time that I have ever heard it claimed that an authority which authorized an injunctional proceeding to abate a private nuisance could be held to sustain a proceeding to eject a man from the possession of real estate, and which possession had, prior thereto, been rightful. If the remedy by injunction must be made rightful by analogy from such a case as this, it certainly has little to support it as authority.

*Webster v. Cooke*, 23 Kan, 637, is a case where the plaintiff was in the lawful possession of certain Indian lands to which he was making an effort to acquire title. The defendant took forcible possession of plaintiff's house and was preventing plaintiff from pasturing his sheep upon the land—was driving them and dogging them therefrom—and the plaintiff showed that great injury would result to his flock if they were not permitted to graze upon the land, and he asked an injunction to prevent the defendant from driving plaintiff's sheep from the land. The plaintiff did not ask to have the defendant ejected from the house, admitting that even though the defendant was a trespasser, and had never had any lawful possession of any part of the presmises, but had taken possession of the house through force, that the plaintiff could not re-

cover his actual possession in this way, nor eject the defendant from the actual possession. The gist of the case is reposed in one sentence of the opinion: "The lawful possession of George Webster gave to the plaintiff, under the arrangement pleaded, the right to graze his flocks on the land, and defendant had no authority to interfere."

The case of *Downing v. Reeves*, 24 Kan. 167, is one where both parties each had partial possession of certain improvements upon a tract of Kaw Indian trust lands, and the order of the judge was that "each party should be enjoined from interfering with the improvements made by the other." This doctrine has so long been the recognized law of the entire country that it is manifestly authority upon the question which it decides, but it gives no color of approval for the case at bar.

The case of *Long v. Kasebeer*, 28 Kan. 226, discloses a transaction where the plaintiff was the owner and in the actual possession of a quarter section of land, and he brought his proceeding by injunction to restrain the defendant from entering upon the premises and erecting buildings thereon, and from carrying out his efforts to deprive the plaintiff, who was the owner, of the possession of the land. Only a brief citation from the decision of Chief Justice Horton in the case is necessary to show its dissimilarity with the one at bar:

"We do not understand from the petition that the defendant has actually turned the plaintiff out of possession and taken full and absolute possession, but only that he has entered upon the land under some pretended claim of title, and that he is seeking to oust the plaintiff of all possession, and to assume the management and control of the land at the time of the application for the temporary order of injunction."

These are all of the Kansas decisions which are cited by the court as authority for this proceeding by

injunction and as it was their citation, and not their contents, that made them a formidable objection to my dissent, I have taken the pains to thus briefly review them in order, that it may be seen that they are not authority for this case. There is, however, a Kansas case that is in point upon the question here under consideration, but it is squarely against the conclusion reached by the court. It is the case of *Bodwell v. Crawford*, 26 Kan. 293, wherein the defendant had entered into the possession of plaintiff's building under an unauthorized lease, and was seeking to convert the building into a place of amusement, including theatrical performances. Concerning the wrongfulness of defendant's possession, and plaintiff's appropriate remedy, the opinion, which is in the clear language of Mr. Justice Brewer, says:

"It is clear that the plaintiff, having never leased the lot or authorized its lease, is entitled to his legal action to recover possession. The defendant has taken possession without authority from the owner, and he has no right to such possession. In all such cases of the unauthorized taking possession of real estate, the ordinary remedy is an action at law for the recovery of possession. Under some circumstances the owner may maintain forcible entry and detainer, and in all he may maintain ejectment. Both are actions at law. Has he the further remedy of injunction?  *  *  The unauthorized possession by defendant is of course an injury to plaintiff's rights, and entitles him to relief; but no one will contend that a mere unlawful possession gives occasion for the interference of a court of equity. The reasons for this are familiar to every lawyer. In equity neither party is of right entitled to a jury, but the constitution preserves inviolate the right of trial by jury as it exists at the common law, and an action for the recovery of real estate is one, in which, at common law, parties are entitled to a trial by jury. They have a right to the verdict of a jury upon the questions whether plaintiff was owner, whether the defendant was in possession, and whether if so the possession was unlawful."

On the subject of the right to the remedy by injunction to recover the possession of premises held without authority, it is said by the court in this case in the following clear language:

"Where a party enters into the possession of premises without any authority from the owner and under pretense of a lease made by an unauthorized agent, and puts said premises to a use which is not forbidden by the law, the owner's remedy is an action at law to recover the possession, and he may not resort to equity and obtain an injunction, and thus take away the constitutional right of a trial by jury, on the ground that such use is, in his judgment, immoral and mischievous in its tendencies, and one calculated to injure his reputation in the community."

Now, in that case the plaintiff was the absolute owner of the property in fee simple, and the defendant had no right, and never had had any right, to possession of the premises, yet the court held that the procedure to oust him from such possession could not be by injunction. Surely, Wallace, with simply a homestead entry upon the land, with no title and with no equity therein, as all the courts of last resort, except this one, have held, could not have a greater right to choose his remedy by injunction to dispossess Woodruff, than one who was not simply possessed of an inchoate right but possessed of an absolute title and an absolute and unqualified right to possession.

The argument resorted to by the court to uphold this proceeding by injunction, if it carried any logical sequence, would entirely wipe away the legal proceedings by ejectment and forcible entry and detainer whenever the complainant chooses to submit his controversy to the court rather than to a jury. The same argument of lack of speediness in legal proceedings would apply to all cases where the owner of land, or a person entitled to the possession thereof, had a right of action. If forcible entry and detainer and ejectment are not speedy enough remedies to give the

entire possession of a tract of land to one who has an inchoate right of a homestead entry therein, how can they be speedy enough as remedies of relief to one who is the absolute owner of the land? If they are not speedy enough remedies in this case to afford Wallace relief in putting Woodruff out of his house and off of the seventy acres which he has in cultivation, and of which he had, before that time, had the rightful possession, but which he had lost by virtue of the decision upon Wallace's contest, how can they be speedy enough remedies to give possession to real estate as against a tenant holding over after his term, or when one has sold the land to another person, or who, by reason of any lack of right, and therefore wrongfully, holds possession of land against another?

The conclusions of the court that "a person holding an uncancelled homestead entry upon land has a good and legal title in the possession, and a contingent title in the patent," and "he stands in the same relation towards the land as he would in any other matter wherein he had contracted and such contract had been revoked, or completely rescinded," and that he has a "contingent interest in the patent," and that he has a "contingent title, which he holds under his filing," are not supported by any authority, and I dissent, particularly, also, to such conclusions. If this conclusion of the court, however, were true, that the entryman had any such interest or title in the land, then it would of itself absolutely negative the right of Wallace to resort to a proceeding by injunction to dispossess Woodruff, for one who has such an interest in land as to give him an absolute right of possession, is entitled, under the Codes, which give the right to a remedy by ejectment to recover possession upon an equitable or possessory interest, to proceed by the action of ejectment.

This, it is true, would overrule *Adams v. Couch*, 1

Okla. Rep. 17, but the supreme court has heretofore, as I view it, done that in *Sproat v. Durland, supra.*, and now hold that a homestead entry gives to a party an entirely different right and title than is consistent with the views of the court in *Adams v. Couch.* It would only be natural that the case should be overruled in this phase of it also.

I have contented myself with a review of the Kansas decisions cited as authority for the right of plaintiff below to proceed by injunction to dispossess Wallace, because such decisions, if they supported the citation, would be manifestly the strongest that could be relied upon. If they were authority for such action, it would be manifestly unnecessary to go any further, and, on the other hand, as they do not, and as what I claim to be the Kansas authority is the other way, it is unnecessary to consume further time and space in reviewing the authorities cited. A casual examination of the other cases and the authorities referred to, will make it apparent that they give no countenance for the ejectment of a person from the actual and peaceable possession of land by an order of injunction issued in the only action ever brought to determine the legality or illegality of such possession.

The most appropriate language that I can now refer to, in support of my view that the court ought not to disposses Woodruff from this land, through this proceeding by injunction, is that written by Mr. Justice Brewer, in *Bodwell v. Crawford, supra.*, in which the court denied the right to the exercise of the remedy by injunction in a case which, as we have seen, the party agrieved had certainly as much right to it as the plaintiff below has in this case as a means of dispossessing Woodruff from this land, and said:

"It is the duty of the courts to stand by the ancient land marks, to walk *super antiquas vias.* Additional

remedies must be established by other bodies and in other ways."

I am authorized to state that Mr. Justice McAtee joins with me in this dissent.