(89 South. 475)
## MOBILE & O. R. CO. v. ZIMMERN.
### (1 Div. 173.)

(Supreme Court of Alabama. May 12, 1921.)

1. **Injunction ⬀54—Railroad may be enjoined from appropriating a shipper's coal to avoid multiplicity of actions.**

A railroad, appropriating coal accepted for shipment and avowing its purpose to again do so if occasion arises making appropriation of such coal necessary to the continued operation of the railroad, will be enjoined from appropriating a shipper's coal, to obviate a multiplicity of actions, notwithstanding the shipper's remedy at law.

2. **Carriers ⬀77—Court may require carrier to accept goods and deliver them at designated destination.**

Generally a court may compel a carrier in the exercise of its public duty to accept goods tendered to it for shipment, and thus impose on it the absolute duty to deliver them at their designated destination.

3. **Injunction ⬀23—Conveniences of private parties not considered, when act complained of violates a clear legal right.**

No balancing of the conveniences of private parties will be indulged when the act complained of is tortious in itself as well as in its incidents, and the preservation of a clear legal right is involved.

4. **Injunction ⬀24—Not denied by fact public convenience will suffer by issuance.**

Where a railroad appropriates coal accepted by it for shipment on the theory it is necessary to appropriate the coal to continue operating the railroad by reason of a coal shortage, and that it would pay the shipper therefor, and avows its purpose to continue the appropriation of the shipper's coal if occasion arises, the shipper will not be denied an injunction restraining the railroad from continuing to appropriate its coal, on the ground that public interests will suffer thereby.

5. **Injunction ⬀67—Granted to keep corporations within line of authority.**

Equity will exert its power by way of injunction to keep corporations within the line of their authority and to compel obedience to the Constitution without regard to the fact that they may be trespassers or the injuries they inflict may be irreparable.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Bill by Samuel Zimmern against the Mobile & Ohio Railroad Company to enjoin it from confiscating coal consigned to complainant over respondent's road. From a decree refusing to dissolve the temporary injunction, the respondent appeals. Affirmed.

Stevens, McCorvey & McLeod, of Mobile, for appellant.

There is a plain and adequate remedy at law, denying the suit in equity. 14 R. C. L. 312 and 442; 4 Pomeroy, § 1338, and citations; 158 Ala. 343, 48 South. 477, 24 L. R. A. (N. S.) 399; 147 Ala. 393, 41 South. 1003, 7 L. R. A. (N. S.) 87, 11 Ann. Cas. 461; 54 Ala. 320; 54 Ala. 499. Special damages are recoverable under the facts as disclosed by this record. 8 R. C. L. 455–461; 167 Ala. 431, 52 South. 843, 29 L. R. A. (N. S.) 194, 140 Am. St. Rep. 47; 4 Ala. App. 580, 58 South. 931; 6 Ala. App. 301, 59 South. 355. The facts do not authorize the resort to this extraordinary remedy. 14 R. C. L. 321, 354, and citations; Spelling, Inj. and Extra. Remedies, § 58, and citations; 153 Ala. 523, 45 South. 234; 138 Ala. 597, 36 South. 178, 100 Am. St. Rep. 53; 173 Ala. 182, 55 South. 793; 55 N. Y. 390. The injury was doubtful, eventual, or contingent, and equity will not interfere. 14 R. C. L. 355; 75 Ala. 510, 51 Am. Rep. 463; 138 Ala. 597, 36 South. 178, 100 Am. St. Rep. 53; 147 Ala. 393, 41 South. 1003, 7 L. R. A. (N. S.) 87, 11 Ann. Cas. 461; 173 Ala. 182, 55 South. 793; 57 Pa. 274, 98 Am. Dec. 221; 17 N. J. Eq. 75, 86 Am. Dec. 252; 85 Ind. 240, 44 Am. Rep. 10; 24 Fla. 103, 3 South. 865; 45 N. J. Eq. 726, 17 Atl. 826, 4 L. R. A. 738. Legal questions only are involved. 14 R. C. L. 321; 141 Ala. 348, 37 South. 388, 109 Am. St. Rep. 30, 3 Ann. Cas. 965. The sworn answer sufficiently denied the allegations to authorize the dissolu-

tion of the injunction. 142 Ala. 462, 38 South. 1026; 106 Ala. 546, 17 South. 706; 96 Ala. 224, 11 South. 452; 51 Ala. 484; 1 Stew. 190. Private convenience must give way to public necessity, and the final result must be looked to in determining who will suffer most largely. 22 Cyc. 784, 785; 14 R. C. L. 358, 359, 385; 75 Ala. 510, 51 Am. Rep. 463; 138 Ala. 597, 36 South. 178, 100 Am. St. Rep. 53; 95 Ala. 259, 10 South. 134; 87 Ala. 468, 6 South. 192; 60 N. J. Eq. 385, 45 Atl. 995, 48 L. R. A. 717, 83 Am. St. Rep. 642; 203 Ala. 137, 82 South. 167; 188 Pa. 484, 41 Atl. 612; 77 Ala. 262; 86 Ala. 458, 5 South. 791, 3 L. R. A. 861. For authorities determining when trespass will be enjoined, see 201 Ala. 150, 77 South. 574; 127 Ala. 471, 29 South. 173, 85 Am. St. Rep. 137; 87 Ala. 468, 6 South. 192; 130 Ala. 444, 30 South. 449; 158 Ala. 343, 48 South. 477, 24 L. R. A. (N. S.) 399; 189 Ala. 13, 66 South. 720; .7 Ga. 49; 14 R. C. L. 442; 3 Ohio, 370, 17 Am. Dec. 607. Modern conditions render it necessary for common carriers to have fuel. (D. C.) 260 Fed. 254; 14 R. C. L. 444; 189 Ala. 13, 66 South. 720; 198 Ala. 236, 73 South. 486, L. R. A. 1917C, 232. Equity will not enjoin a solvent respondent from trespassing on personal property. 141 Ala. 664, 37 South. 922; 68 Neb. 706, 94 N. W. 959.

Harry T. Smith & Caffey, of Mobile, for appellee.

The principle of comparative injury is without application, where the act complained of is tortious. 119 Ala. 133, 24 South. 368; 14 R. C. L. § 61, and citations; 151 Pa. 482, 25 Atl. 127; 5 Weekly Rep. 636; 7 Ohio Dec. 344. There is no question about complainant's legal rights to have respondent discontinue his misappropriations of complainant's property. Section 23, Const. 1901. There is no question about the equity of the bill. 189 Ala. 66, 66 South. 657. Pomeroy's Equity, § 2054; 142 Ala. 344, 37 South. 680; 46 Md. 15; High on Injunctions, 616; 51 La. Ann. 29, 24 South. 807, 72 Am. St. Rep. 442; 63 Me. 279, 18 Am. Rep. 208; 91 U. S. 355, 23 L. Ed. 428; 56 Ill. 365, 8 Am. Rep. 690. Equity will enjoin repeated trespasses, past and future; whether the trespass is against personal or real property. 175 Ala. 655, 57 South. 437; 144 Ala. 402, 39 South. 317; 134 Ala. 299, 32 South. 700; 121 Ala. 629, 25 South. 836; Pom. Eq. § 190. Equity is available to keep public service corporations within their constitutional limits. Pom. Eq. 1879; 75 Ala. 281; 99 Ala. 24, 10 South. 267, 14 L. R. A. 462.

SAYRE, J. Appellee, to whom we shall hereafter refer as complainant, filed the bill in this cause for an injunction. To state his bill in short, he avers that he is engaged in the business of buying, selling, and exporting coal in the city of Mobile; that he constantly purchases and ships from the mines in this state coal in large quantities, consisting of hundreds of carloads; that many persons depend on him for a supply of coal; that he loads many ships under contract; "that in order to sell cargoes of coal for vessels, it is necessary that he should, and he does constantly contract for the loading of said vessels within a period of a day or two under contracts stipulating for the payment of large demurrage in the case of any delay in the loading of said vessels;" that this coal cannot be obtained except by purchase from the mines; that he is constantly shipping coal over the defendant's railroad; that a considerable part of his business consists in furnishing coal to public utilities, to gas companies, street railroad companies, electric lighting companies, etc.; that defendant is a common carrier, a public service corporation; that defendant regularly confiscates and appropriates to its own use complainant's coal shipped over its line, in violation of its duty as a common carrier, and without regard to the loss and inconvenience to which complainant is thereby subjected; that complainant is dependent upon the defendant railroad company for the transportation of his coal. On this bill, duly verified, the Chief Justice of this court ordered a preliminary injunction, in accordance with complainant's prayer, restraining the defendant railroad company from further converting any coal shipped over its line to complainant.

Omitting details, defendant answered that its line of railroad reached and served many communities in Alabama, Mississippi, Tennessee, Kentucky, and Illinois which are dependent upon it for transportation facilities and for which it does an enormous business; that it needs great quantities of coal to operate its trains; that it had outstanding contracts for sufficient coal, but that strikes and labor troubles had made it necessary to the movement of its trains that it should make use of some parts of coal shipments over its road, without which it would have been impossible to transport freight, including coal shipped to complainant; that it has used a few carloads of complainant's coal, but it has fairly distributed its exactions among all shippers of coal; that it has offered to pay complainant for his coal its invoice price at the mines, plus 10 per cent.; that it has not greatly interfered with complainant's business, and that it will not be necessary to appropriate any more of complainant's coal for some months to come, "though, of course, this respondent cannot know what conditions the future may bring forth, and on account of strikes and other causes entirely beyond the control of this respondent an emergency may again arise where it will be absolutely necessary for this respondent to appropriate some of the coal consigned to complainant to keep its trains running, and in order to enable re-

spondent to deliver to complainant the other coal consigned to complainant and shipped over the railroad line operated by this respondent; that, for this reason, an injunction such as is prayed for by complainant might result in this defendant being unable to operate entire trains for days at a time, and thus result in untold damage and suffering, not only to the general public, but to the complainant himself, who would, in such an emergency, be deprived of receiving a great part of the coal consigned to him and shipped over the line of respondent; that at no time in the past has it been, and in all probability at no time in the future will it be, necessary for this respondent, even in the greatest emergency, to appropriate for use in operating its trains more than a very small fraction of the coal consigned to complainant"; that its practice in respect to the appropriation of coal shipped over its line is one that has been indulged by all railroads in this country for ·50 years or more, "and is a practice which, from the very nature of the case, will necessarily have to be indulged from time to time in the future, as occasion arises." This statement will suffice, we believe, to disclose the nature of the controversy between the parties to this cause.

The parties offered affidavits tending to sustain their respective contentions, and upon a hearing the court denied defendant's motion to dissolve the temporary injunction. The court's ruling on the motion to dissolve is now assigned for error.

Defendant says in its brief that it is "not asking the court to condone, authorize, license, or recognize as valid the taking of complainant's coal in the manner and under the circumstances complained of," but only that the court will not enjoin such taking on the facts presented by the record. We will notice as briefly as may be several considerations advanced in support of defendant's position.

[1, 2] In the first place, defendant contends that the court of equity will not enjoin mere trespasses to personalty, unless in case of insolvency, for the reason that there is a plain, adequate, and complete remedy at law. On the question thus presented and on the allied question that arises where a single defendant, by repeated acts of trespass, makes it necessary for the plaintiff to pursue his legal remedy by a succession of actions, we quoted at some length the language of Pomeroy's Equity Jurisprudence in the case of Tidwell v. Hitt Lumber Co., 198 Ala. 236, 73 South. 486, L. R. A. 1917C, 232. That language, which we need not repeat, tended to support the equity of complainant's bill in this cause, and shifted somewhat the previous attitude of this court, bringing it more into line with the current of modern opinion. But we have of old no authority denying the power of equity in a case such as is here disclosed; for defendant, abusing the law which conferred upon it corporate life and functions, has not only trespassed against complainant's property rights, but, assuming to exercise a power which resides only in the sovereign state, has taken complainant's property, at the same time avowing its purpose to repeat the process if occasion arises, leaving complainant to such compensation as it may recover by negotiation or repeated actions at law. We do not affirm that there may not be conditions, arising without the fault of the carrier, in which it may refuse to accept goods for transportation, but in general the court may compel the carrier, in the exercise of its public duty, to accept goods tendered to it for shipment, and thus impose upon it the absolute duty to deliver them at their designated destination. If then the court may not, to quote again defendant's answer and brief, condone, authorize, license, or recognize as valid defendant's taking of property consigned to it, in the circumstances shown by the record, and yet is powerless to interfere despite defendant's announced intention, in effect, to do the like again on what it may deem proper occasion, its jurisdiction would hardly seem to deserve the name of equity. The conclusion thus reached will be aided incidentally, as we proceed in our statement of the other points involved.

[3] Complainant is insisting upon a right acquired by contract and protected by the policy of the law, and the court is not free to consider the relative conveniences of the parties. No balancing of the conveniences of private parties will be indulged when the act complained of is tortious in itself as well as in its incidents and the preservation of a clear legal right is involved. White v. Harrison, 202 Ala. 623, 81 South. 565; 14 R. C. L. p. 359, § 61.

[4] It is said that where the damage to the complainant from the refusal of an injunction will be trifling and public interests will suffer by its issuance, injunction will be refused. American Smelting & Refining Co. v. Godfrey, 158 Fed. 225, 89 C. C. A. 139, 14 Ann. Cas. note p. 20. And 22 Cyc. 784, 785, is cited. We have examined quite a number of the cases cited to the text above without finding sufficient reason to disturb the conclusion to be presently stated. It will be found that most of them were affected by considerations not here appearing, as that complainant had no legal right, or his right was doubtful, or had been forfeited by laches, or for some other reason complainant was estopped, or the injunction was merely ancillary, or preliminary and interlocutory. It is conceded, of course, that in a case where preliminary injunction is sought for the preservation of the status quo pending a determination of the right in suit, consideration of the balance of injury is proper; but this is not really such a case, for here the facts are admitted and complainant's legal right is clear, is not denied. Notwithstanding this clear

status of legal right, defendant avers that the public interest requires that in times of emergency its appropriation of coal belonging to shippers, without which, as it avers, its railroad cannot be operated, be not interfered with by the court. We think this contention cannot be sustained in principle or fact. At this point we can do no better than quote Mr. Pomeroy:

"A further element is sometimes introduced into the case by the fact that the defendant is engaged in a business which serves public convenience, and thus can plead, not only the injury to himself, but also to the public, as a reason for not granting the injunction. It should be premised in the beginning that the question cannot arise except in a case in which some sufficient reason for equity jurisdiction, such as irreparable injury or the prevention of a multiplicity of suits, exists."

The present case goes even further:

"In other cases the injunction will be refused on the simple ground that the legal remedy is adequate. It is believed, too, that the question of the convenience of the public should be treated as immaterial, though it must be said that courts have sometimes allowed their decision to be influenced by this consideration."

The learned author then quotes from an English case, in which the court, answering the suggestion that the convenience of the public should be taken account of in determining the propriety of an injunction, and that Parliament might disregard complainant's right, said:

"Parliament is, no doubt, at liberty to take a higher view upon a balance struck between private interests and public interests than this court can take."

And Mr. Pomeroy resumes:

"In other words, so far as the utility to the public is made the basis of an argument, it would seem to be simply urging the propriety of taking private property for public use without the requisite condemnation proceedings—the unwise policy of which cannot be doubted, * * * and it can safely be said that the argument based on the balance of injury to the defendant will be availing only in a limited class of cases." Pom. Eq. Jur. (4th Ed.) § 1922.

Section 23 of the Constitution provides that:

"Private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner."

[5] This court, in common with others, holds that equity will exert its power by way of injunction to keep corporations within the line of their authority, and to compel obedience to the Constitution without regard to the fact that they may be trespassers or the in-juries they inflict may be irreparable. E. & W. R. Co. v. E. T. V. & G. R. Co., 75 Ala. 275.

But defendant does not intend to say that the few carloads of coal, the property of complainant, which it has appropriated from time to time and expects to appropriate in the future as occasion arises, are essential to the operation of its road. Notwithstanding the concession to which we have referred, the real meaning of defendant's contention is that the court, by its decree in the pending cause, should set a precedent by which defendant will be informed that the court will not interfere with its practice in general—in effect a license to appropriate the coal of shippers whenever that may be necessary in its judgment, leaving shippers, as we have already suggested, to recover the value of their coal by negotiation or actions at law, and imposing upon complainant in this proceeding the burdensome, if not impossible, task of refuting defendant's assertion that, measured by the situation as it was at the moment, the appropriation of complainant's coal was the result of a public necessity. But the fact is that, when the privileges with which carriers are clothed are considered, it must in any case be hard for the carrier to show a necessity affecting the public—and we think defendant failed in this case—for, since railroads must have fuel, "they are entitled, and indeed required by law, to take all proper and just measures to assure the regularity and certainty of their fuel supply," and "the carrier must be free to contract for the total output of a mine, if it so desires; or it may contract for any part of a mine's output less than the whole, and it is entitled to get its fuel coal first, for without fuel it cannot haul even commercial coal to its destination, to say nothing of complying with its obligations to the public at large." Springfield Light, Heat & Power Co. v. Norfolk & Western Ry. Co. (D. C.) 260 Fed. 254. But if property is accepted for shipment as the property of the consignee, it must be delivered at its destination (case last above); nor have the public, in our opinion and speaking more broadly, any interest to be served by the maintenance of a proposition so subversive of property rights in general as that advanced on behalf of defendant. The public interest rather is that property rights, as guaranteed by constitutional and statutory law, be preserved against the inroads of private persons, natural or artificial, though they pretend to act in the public interest.

We have seen no case that supports defendant's objection to complainant's bill. Springfield Light, Heat & Power Co. v. Norfolk & Western Ry. Co., supra, is cited, not indeed as directly in point, but as containing an interesting discussion with a tendency to bring defendant's position into favorable consideration. But that was an action at law, and the question directly in issue was wheth-

er the railroad company should pay plaintiff for coal which it had appropriated to its own use. The court, speaking of six carloads delivered by the colliery to the defendant and received by defendant for delivery to plaintiff, said:

"Assuming, but not deciding, that defendant's necessity morally justified its taking the six cars in order to keep its railroad running, the court can see no reason why the defendant should not pay the plaintiff for them."

As for the rest of the coal in dispute in that case, the railway company, having an unfulfilled contract with the colliery for coal, refused to accept it as plaintiff's coal, but appropriated it to the satisfaction of its own contract. Upon this branch of the case the court observed:

"This particular coal, as between defendant and plaintiff, belonged to defendant, and it owed the plaintiff no duty with respect thereto."

These conclusions do not help the defendant in this case in the least. But, if the federal District Court, going further, may appear to have recognized, arguendo, the right of common carriers, in cases of necessity in the performance of contractual obligations, to appropriate coal received by them for transportation, we think it will suffice, in the way of rebuttal, to refer to what has already been said, and perhaps it will not be inappropriate to add the comment of the Harvard Law Review (February, 1920, pp. 605, 606) as follows:

"The virtual recognition by the court of a right of angary in public utilities, it is submitted, is without precedent, and should not be followed. Its implications involve all the dangers of self-help. Even the power of eminent domain is no defense to a taking of property by self-help, which is certainly not due process" —citing City of Clinton v. Franklin, 119 Ky. 143, 83 S. W. 140.

Without prolonging the discussion, we state our conclusion that the trial court committed no error in overruling the defendant's motion to dissolve the temporary injunction.

Affirmed.

All the Justices concur, GARDNER, J., concurring in the conclusion.