## DUSBABEK et ux. v. LOCAL BLDG. & LOAN ASS'N.

No. 27063.   Dec. 8, 1936.

Rehearing Denied Jan. 5, 1937.

I. H. Lookabaugh, for plaintiffs in error.

Everest, McKenzie & Gibbens, for defendant in error.

BAYLESS, J.   George F. Dusbabek and wife appeal to this court from the judgment of the district court of Garfield county, Okla., granting an interlocutory, and later, a permanent mandatory injunction to them to restore to certain real estate certain attachments taken therefrom. The action of the district court was taken in response to an application filed by the Local Building & Loan Association, a corporation, plaintiff in a foreclosure action wherein the Dusbabeks were defendants.

A statement of the course of the lawsuit will aid in understanding the controversy and issues. The association instituted an action against Dusbabeks et al. to foreclose a mortgage upon certain residence real estate in Enid. During the pendency of the action a receiver for the property was appointed, who took charge thereof. Judgment was rendered in the action establishing the mortgage lien and ordering a sale of the property in the manner prescribed by law. Dusbabek thereafter applied to a judge of the court for the discharge of the receiver, fraudulently representing to the judge that he was arranging to refinance the mortgage debt, and that it was necessary for him to be in possession of the property to accomplish this plan. The judge entered such an order, and in August, 1935, Dusbabek got possession of the real estate. August 27, 1935, the property was sold by the sheriff and the association, as judgment creditor, purchased. Dusbabek made objection to the confirmation of the sale, and when the same was denied he made and preserved a record for an appeal. However, on Sunday, September 22, 1935, Dusbabek detached from the real estate the following: The sliding doors from the garage, a kitchen sink and the faucets and traps thereon, the electric light fixtures from the living room, dining room, and front porch, a stove, lavatory, hot water heater and pipes attached from the bathroom, and a hot air furnace and control chains from the basement (which was attached to the various rooms of the house by hot air vents); and moved these attachments to an adjoining county. The association learned of this, and on September 26, 1935, filed its verified application setting forth these facts and asking for injunctive relief. The court entered instanter a temporary injunction, mandatory in nature, and set the same for hearing at a later date. When notice of this application and order had been served on Dusbabek, they moved to quash and when this was denied, they demurred, and when the demurrer was overruled, they responded to the application. At the hearing, Dusbabek admitted detaching these attachments and taking them to another county, and said he did so on his own volition, but that his defense to the order of the court was on advice of counsel. The trial judge found that all of said attachments, except the stove taken from the bathroom, were permanent additions to the real estate and integral parts thereof, and further

found that they were yet in Dusbabek's possession and could be restored to the premises; and ordered Dusbabek to restore them at his own cost. The trial judge premised his action upon the facts developed at the hearing and in consideration (1) of Dusbabek's insolvency; and (2d) the lack of an adequate, plain, and speedy remedy at law for the association.

The Dusbabeks raised several contentions, but in our opinion they may be grouped and discussed in two groups.

The first group will cover the contentions relating to the power of the district court over the Dusbabeks in view of the fact that it is plain that the district court had exhausted the relief it was authorized to grant in the foreclosure action pending before it. The Dusbabeks say that this power was exhausted and they had taken up their residence in another county, and that they could only be brought to bar again by a new action in the county of their residence.

In the logical sequence of a foreclosure action the last thing to be done is to place the purchaser in the possession of the property. A general real estate mortgage covers the real estate described, which necessarily includes attachments of the character and status of those herein involved. The judgment establishing the lien and the sale thereunder likewise cover the same property, in the absence of adjudicated exceptions. Therefore the purchaser at a judicial sale buys what the mortgage covered, no more or less, unless specified. Therefore, the association, as the purchaser, was entitled to be put in possession of the property which was sold and confirmed to it. This is done by a writ of assistance. For a discussion of this ancient writ, see 5 C. J. 1315, 42 C. J. 272, and 19 R. C. L. 637, sec. 454. This court said in Richmond v. Robertson, 50 Okla. 635, 151 P. 203:

"This right has been exercised by courts of chancery in England since the reign of James I and followed in this country for so long a period that such practice has become the settled law of the land, and the doctrine is upheld upon the theory that the power to apply a remedy is coextensive with the jurisdiction of the subject-matter. It would be absurd to say that a court with equity powers, having exclusive authority to foreclose the equity of redemption of a mortgage, to call all the interested parties before it, and to decree a sale of the mortgaged property, does not have the power to put the purchaser in possession against one of the very parties to the suit."

As a necessary corollary, the district courts of this state do not lose jurisdiction of the parties to a foreclosure action, nor of its power to enter binding orders and decrees on them relating to the relief involved in the action until it has placed the purchaser at the judicial sale in possession; and it necessarily follows that any party to the action may be brought before the court, upon written notice not rising to the dignity of a summons, irrespective of removal from the county of venue and irrespective of time, for a hearing relating to some step to be taken by the court necessary to the completion of the relief awarded. There is no merit in this group of contentions.

The second group of contentions deny the power of the court to grant the injunction, first, upon general principles, and, second, upon the ground that there existed a plain, speedy, and adequate remedy at law. Our discussion of these contentions will cover both of these grounds at the same time.

It would serve no useful purpose to undertake an academic discussion of the injunctive power of courts of equity. It is generally recognized that an injunction may be either preventative (prohibitory), to restrain the commission or the continuance of an act; or mandatory, to require the doing or undoing of an act. See 14 R. C. L. 305, sec. 2. It is this last phase of injunctive relief with which we are to deal. Because of the drastic nature of the command, and largely out of consideration of the vexation attendant upon the enforcement thereof, the courts are less likely to exercise their sound discretion in favor of granting mandatory injunctions than they are in relation to preventive injunctions. It is with these considerations in mind that we approach the determination of this matter. The modern rule is well stated in the case of Fredericks v. Huber, 180 Pa. 572, 37 Atl. 90, as follows:

"Equity regards the substance rather than the form of things, and will not allow itself to be baffled by a wrongful change while its aid is being invoked. The modern cases, therefore, have established the rule that the status quo which will be preserved by preliminary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy, and equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status, though he succeeded in making the change before the chancellor's hand actually reached him. The doctrine is not new—only its application in practice to meet the efforts of those who endeavor to be swifter than justice and the law."

"This court has had occasion to discuss the

principles which cause a court of equity to issue injunctive relief, mandatory in nature. In Woodruff v. Wallace, 3 Okla. 355, 41 P. 357, we said:

"'An injunction for possession is not a new thing in a court of equity. It has long been used in England; it is directed in certain cases by the aforesaid act of assembly, and it would disgrace our laws and administration of justice if, after title to land has been established by the adjudication of a court, there could be no way of obtaining possession but after obtaining judgment in ejectment. * * *'" (High on Injunctions, sec. 360.)

"'And it is said by an eminent jurist that: "Courts of equity also interfere and effectuate their own decrees in many cases by injunctions, in the nature of a judicial writ or execution, for the possession of the property in controversy; as, for example, by injunctions to yield up, deliver, quiet, or continue the possession. Indeed, they have been distinctly traced back to the reigns of Elizabeth, and Edward the Sixth, and even to Henry the Eighth. In some respects they bear an analogy to sequestrations'." * * * (2 Story's Eq., sec. 959.)"

And in the case of Sproat v. Durland, 2 Okla. 24, 35 P. 682, we quoted from High on Injunctions, as follows:

"A writ of injunction may be said to be a process capable of more modifications than any other in law; it is so malleable that it may be moulded to suit the various circumstances and occasions presented to a court of equity. It is an instrument in its hands capable of various applications, for the purpose of dispensing complete justice between the parties. It may be special, preliminary, temporary, or perpetual; and it may be dissolved, reviewed, continued, extended or contracted. In short, it is adapted and used by courts of equity as a process for preventing wrong between and preserving the rights of the parties before them."

The use of mandatory injunctions is recognized in several instances of specific equitable relief. They are proper in aid of writs of assistance. 42 C. J. 273, sec. 1934. In fact, a writ of assistance is essentially a mandatory injunction, since its effect is to bring about a change in the possession of real estate—it dispossesses the occupant and gives possession to one adjudged entitled thereto by the court. It is often used to place a receiver in possession of property over which he is given charge. Severns v. English, 19 Okla. 567, 101 P. 750, and authorities cited therein. It is used in many instances in controversies over the possession of real estate. 32 A. L. R. 894, and cases therein annotated.

In Territorial days, when the government of the United States threw open to settlement the lands in certain portions of what is now Oklahoma, many controversies arose over tracts of this land which were claimed by more than one settler. When these adverse claims had been passed upon by the land office of the federal government and one of the claimants had been given a proper certificate of entry, the Territorial Supreme Court sanctioned the issuance of mandatory injunctions in favor of successful claimants to oust the unsuccessful claimants from possession. This was done although it was recognized that the successful claimants had plain, speedy, and adequate remedies at law. Sproat v. Durland, supra, Woodruff v. Wallace, supra, Barnes v. Newton, 5 Okla. 428, 48 P. 190, and other cases. Later on, the scope of cases in which this relief was proper was limited, but this was upon considerations other than the lack of power of the court to act.

No case was cited to us analogous to the one under consideration, and we have found only one in which the question of mandatory injunctive relief was involved—Verner v. Betz, 46 N. J. Eq. 256, 19 Atl. 206, 7 L. R. A. 630, 19 Am. St. Rep. 387. In that case the mortgagor moved from the real estate the dwelling house located thereon when the mortgage was executed; placed the house on another lot, and then sold it to a third person who claimed to be an innocent purchaser. Upon trial the trial court ordered the house restored to the mortgaged realty or the assumption of a portion of the mortgage debt by the third person. Upon appeal this was reversed, and although the appellate court discussed the power of trial courts to issue mandatory injunctions in such cases, and the propriety thereof, it nevertheless set aside the judgment more out of consideration for the rights of the purchaser than anything else.

There are numerous cases similar to the one under consideration found under the head of waste committed on mortgaged premises. In some of those cases equitable relief was sought by receivership, or by seizure of the property as personalty where found and the extension of the lien thereon. In the vast majority of such cases, however, the complaining parties pursued a legal remedy only, seeking either to seize the property removed or to recover a money judgment for the damage sustained.

Upon the issue of whether the association had a plain, speedy, and adequate remedy at law, we are of the opinion that it had not such a remedy. We will concede that its

legal remedy was plain. But at the same time we must recognize the willful disposition of Dusbabek to thwart the association, and to disregard and evade the lawful orders of a court of this state. Under such circumstances no remedy strictly in rem would be adequate, even if it were speedy. Nothing short of a summary and drastic action by a court of equity authorized to act in personam would be adequate.

Therefore, upon full consideration of the principles which guide courts of equity in the exercise of their discretion in such matters, and especially in view of the willfully fraudulent conduct of Dusbabek, we are of the opinion that the trial court arrived at a correct decision in this matter, and did not abuse its discretion.

The judgment of the trial court is affirmed.

McNEILL, C. J., and WELCH, CORN, and GIBSON, JJ., concur.