## MISSOURI–K.–T. R. CO. v. SANDERS.
### No. 1063.

District Court, W. D. Oklahoma.
July 1, 1942.

M. D. Green, John E. M. Taylor, and Lloyd W. Jones, all of Oklahoma City, Okl., for plaintiff.

A. W. Gilliland, of Oklahoma City, Okl., and John G. Hervey, of Norman, Okl., for defendant.

VAUGHT, District Judge.

This is an action to enjoin and restrain the defendant from taking, or otherwise appropriating to his own use, railroad track material leased to him by the plaintiff, and for a mandatory injunction requiring the defendant to return such material already taken and appropriated by him, and deliver same back to the plaintiff on board its cars at Supply, Oklahoma.

The action grows out of three contracts wherein the plaintiff sold certain railroad track materials and leased other such materials to the defendant for spur tracks used in connection with the construction of a dam by the defendant on Wolf Creek near Fort Supply, Oklahoma, for the United States Government.

The first contract, dated August 17, 1940, after providing for the sale of certain material used in the construction of the spur track in question and for relieving the first party, the railroad company, from any liability in the operation of said spur track, provided as follows:

"Likewise for use in the construction of that portion of said trackage to be constructed by Second Party as aforesaid, but for no other purpose whatsoever, First Party will lease to Second Party, delivered on cars at Supply, Oklahoma, the material, consisting of rails, switch stands, switches, frogs, joints, angle bars, and tie plates, of the quantities and of the agreed unit values shown on said schedule Exhibit 'B' as material to be leased by First Party to Second Party. Second Party will pay to First Party, annually in advance, as rent for the use of said leased material, a sum equal to six per cent. on said agreed value as shown on said schedule Exhibit 'B', said rent to run from the date of delivery to Second Party of said material.

"Upon the expiration or any termination of this agreement Second Party will take up said leased material and redeliver the same to First Party loaded on cars at Supply, Oklahoma, and if there shall be any shortage of said material, or any diminution in value in excess of ordinary wear and tear not capable of offset by proper current maintenance, Second Party will make good such shortage or diminution

in value on the basis of the agreed value shown on said schedule Exhibit 'B'."

The schedule exhibit "B" specifies the quantities of said material, the unit cost, and the total cost thereof.

On March 7, 1941, a supplemental agreement was entered into between the parties, having reference, however, only to certain of the material sold to the defendant. On April 26, 1941, a second supplemental agreement was entered into by and between the same parties, having to do with additional material leased to the defendant for the construction of additional spur tracks, to which attached exhibit "B" describing the items, the quantity, the unit cost and the total cost of each item.

The complaint alleges:

"That said construction work to be done by said defendant at Supply, Oklahoma, under his said contract with the United States has been nearly completed, and plaintiff's said contracts with him are, therefore, now practically terminated by the terms thereof, but that although plaintiff has made demands on the defendant for return of said track material so leased to him, in compliance with the terms of said contract, that defendant has failed and refused to return same, but has taken up a portion of the railroad rail, angle bars, and other track material, and trucked same away from said location, and has threatened to appropriate it to his own use, and has notified plaintiff that he will do so, and that he intends to appropriate to his own use about one-half of said track material so leased and loaned to him.

"Plaintiff states that it has need of said track material in connection with the maintenance and operation of its road as a common carrier of state and interstate commerce, including transportation of War Material for the United States and serving the War material plants located along its lines, and will shortly have need for said material in connection with the construction of trackage for further proposed War material plants by the United States along its lines near McAlester, and Frederick, Oklahoma, and Reedville, Texas."

The plaintiff further alleges that:

" * * * defendant's action in so taking said material is in violation of Amendment No. 1 to Limitation Order L-88, issued May 18, 1942, by United States Director of Industry Operations, J. S. Knowlson, pursuant to Title 32, National Defense, Chapter IX, War Production Board, Subchapter B, Division of Industry Operations, Part 1170, relating to used rail and used rail joints, Section 1170.1, (b), Paragraph (c) (2) of which reads as follows:

" 'On and after the effective date of this Order, no person shall sell, transfer, or otherwise dispose of any Used Rail of relayer grade, reroll grade, or scrap grade, unless and until authorization for such sale, transfer, or other disposition shall have been obtained from the Director of Industry Operations; provided that nothing in this paragraph (c) (2) shall prevent any such person from using such Used Rail in his own tracks, or from selling, transferring, or otherwise disposing of not more than ten tons of Used Rail during any calendar month.'

"Plaintiff further states and shows to the court that because of the prohibition contained in said above quoted order this plaintiff cannot, if it so desire, sell, transfer, or otherwise dispose of said track material to defendant, which would be a violation of said order. Plaintiff further states that it has no adequate remedy at law, but only in equity by injunction."

The defendant has filed his motion to dismiss alleging that the allegations contained in the complaint are insufficient to entitle the plaintiff to the relief prayed for.

The matter was set for hearing on the defendant's motion to dismiss and the plaintiff's application for a temporary injunction, and evidence was introduced in support of the allegations of the complaint.

The defendant contends, under his motion to dismiss, that the plaintiff has a plain and adequate remedy at law and, therefore, is not entitled to injunctive relief. This contention will be considered first.

Section 267 of the Judicial Code, 28 U.S.C.A. § 384, is as follows: "Suits in equity, when not sustainable. Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

The District Court for the Eastern District of Missouri, in Hagerhorst v. Indemnity Ins. Co. of North America, 30 F.Supp. 152, 153, said: "The provision of the statute that suits in equity shall not be sustained in any court of the United States

in any case where a plain, adequate, and complete remedy may be had at law, is jurisdictional."

In Singer Sewing Machine Co. v. Benedict, 229 U.S. 481, 33 S.Ct. 942, 57 L.Ed. 1288, that court said: "In the courts of the United States it is a guiding rule that a bill in equity does not lie in any case where a plain, adequate, and complete remedy may be had at law. The statute so declares, Rev.Stat., § 723 [28 U.S.C.A. § 384], and the decisions enforcing it are without number. If it be quite obvious that there is such a remedy, it is the duty of the court to interpose the objection sua sponte, and in other cases it is treated as waived if not presented by the defendant in limine. Reynes v. Dumont, 130 U.S. 354, 395, 9 S.Ct. 486, 32 L.Ed. 934, 945; Allen v. Pullman's Palace Car Co., 139 U.S. 658, 11 S.Ct. 682, 35 L.Ed. 303. There was no waiver here. The objection was made by the demurrer and again by the answer; and so, if it was well grounded, it was as available to the defendants in the Circuit Court of Appeals to prevent a decree against them there as it was in the Circuit Court. Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U.S. 276, 29 S.Ct. 426, 53 L.Ed. 796."

In Northern Pac. R. Co. v. Van Dusen Harrington Co., 245 F. 454, 457, the Eighth Circuit Court of Appeals, in construing this section of the code, said:

"We think it can be safely said that it means at least that the courts have not the power to dispense with the ancient rule of equity jurisdiction which prohibits suits in equity where a plain, adequate, and complete remedy may be had at law. An inspection of the complaint fails to disclose a single ground of equitable jurisdiction. Reduced to its lowest terms, the complaint charges that the appellant is in possession of a carload of wheat belonging to appellee, which it refuses to transport to Evansville, Ind. The real nature of the case cannot be disguised by the fact that appellee is simply demanding the issuance of a bill of lading, for the reason that the bill of lading, once issued, would oblige the appellant to transport the car of wheat. It cannot be disputed but that an action at law for damages is a complete and adequate remedy for the refusal by a common carrier to transport a single carload of wheat. The damages to be recovered are easily ascertainable, and in the present case would be the difference between the

value of the wheat at Minneapolis and at Evansville, Ind., less expense of carriage. People v. New York, etc., R. Co., 22 Hun. (N.Y.) 533."

In Jones v. MacKenzie, 8 Cir., 122 F. 390, 392, the defendants claimed title to certain railroad ties through a sale made under a chattel mortgage, and also claimed to be in possession thereof, though the ties were piled on the land of a third person. An action of replevin was brought against the defendants in a federal court to recover the ties, and they were seized by the marshal, but were delivered into the possession of the defendants on their giving the statutory bond to deliver them to the plaintiff if he should be adjudged the owner. Pending the action of replevin, the complainants, claiming to be the owners of the ties, commenced to remove them, and, on being prevented by the defendants, brought suit in equity to enjoin the defendants from interfering. The court held that the defendants had such possession as entitled them to a trial of the right of property before a jury, and that the suit in equity could not be maintained, and in disposing of the question involved, the court, in the body of the opinion, said:

"The principal question which arises upon the record, as we view it, is whether the case is one which entitled the complainants to equitable relief. If the complainants had been in actual possession of the ties when the action was instituted, as the bill averred, it may be conceded, though, not decided, that the facts alleged might be held sufficient to warrant the interposition of a court of equity, since it was alleged that great injury would result to the complainants if the section of the railroad through Roseau county was not completed prior to the winter of 1899—1900; that no other ties were readily available wherewith to construct that part of the road before the work would be arrested by the approach of winter; and that the acts of the defendants in arresting and threatening the arrest of the complainants' servants and agents had in fact intimidated them to such an extent that they would not handle the ties, or attempt to remove them or place them in the track. These allegations, together with the allegation that the ties had been delivered to the complainants, and that they had paid for the same in full, of which latter fact there was considerable proof, might possibly be regarded as sufficient to justify a court of

equity in affording relief on the ground that the acts of the defendants were wrongful, and liable to occasion irreparable injury, as well as breaches of the peace, if both parties were left at liberty to assert their respective claims to the ties by force and with the strong hand. It is obvious, however, that, if the complainants were not in the actual possession of the ties when the bill was filed, then the case was not one of equitable cognizance, and the bill should have been dismissed on final hearing. It is common knowledge that courts of equity do not entertain bills to settle the title to personal property when the title is legal, nor for the specific performance of contracts relating to personalty, unless the property is of a peculiar character. Bispham's Equity, § 368; Eaton on Equity, p. 527. When the title to personal property, such as railroad ties, is in dispute, and the title asserted by the respective parties is a strictly legal title, and in no sense of an equitable character, a court of law is the forum in which one who is out of possession should seek relief; doing so by an action of replevin, or for the claim and delivery of personal property, as it is sometimes termed in codes of procedure. The true owner of real property, if he is not in possession, cannot maintain a bill in equity to remove a cloud upon his title and to establish it, except in virtue of an express statute giving him the right to sue in that forum; and even then he cannot sue in equity in the federal courts unless the land be vacant and unoccupied, so that a suit in ejectment will not lie. Whitehead v. Shattuck, 138 U.S. 146, 152, 155, 11 S.Ct. 276, 34 L.Ed. 873; Sanders v. Devereux, [8 Cir.], 8 C.C.A. 629, 60 F. 311. There is as much, if not greater, reason for enforcing this rule when the title to personalty is in dispute, and the titles are legal. Nor does it make any difference, we think, that, under the statutes of the state where the controversy arises, the defendant, when sued in replevin for the wrongful detention of personal property, may be entitled to retain it until a final hearing and judgment, by giving a bond. Even under such a statute, the relief obtainable in a court of law must be esteemed adequate, although the complainant may not be able to obtain the actual possession of the res as speedily as he would like to do, since, besides recovering the property, he is entitled to recover all the damages which he may have directly sustained by reason of its wrongful detention."

In Yellow Pine Export Co. v. Sutherland-Innes Co., 141 Ala. 664, 37 So. 922, 923, the Supreme Court of Alabama said:

"It is an elementary and fundamental rule that, before a complainant is entitled to relief in a court of equity, he must have no plain and adequate remedy at law. * * * * * *

"It is a rule of almost universal application that an injunction will not issue to take the property out of the possession of one party and put it in the possession of another."

In Northwestern Light & Power Co. v. Town of Milford, 8 Cir., 82 F.2d 45, 47, the court said: "A breach of the contract would give to the plaintiff a cause of action at law for damages. The amount which the plaintiff would be entitled to recover in case of a breach would be readily ascertainable. Under the circumstances, a suit in equity for an injunction to restrain a breach would not lie. Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U.S. 276, 281, 29 S.Ct. 426, 53 L.Ed. 796; Singer Sewing Mach. Co. v. Benedict, 229 U.S. 481, 484, 33 S.Ct. 942, 57 L.Ed. 1288; Northern Pac. Ry. Co. v. Van Dusen Harrington Co. [8 Cir.], 245 F. 454; Cappetta v. Atlantic Refining Co. [2 Cir.], 74 F.2d 53, 98 A.L.R. 418; New York Guaranty & Indemnity Co. v. Memphis Water Co., 107 U.S. 205, 2 S.Ct. 279, 27 L.Ed. 484; Raton Waterworks Co. v. Raton, 174 U.S. 360, 19 S.Ct. 719, 43 L.Ed. 1005; City of Seattle et al. v. Puget Sound Power & Light Co. [9 Cir.], 284 F. 659."

In Commonwealth Trust Co. v. Reconstruction Finance Corp., 28 F.Supp. 645, 647, the District Court for the Western District of Pennsylvania had a similar question under consideration, and that court said:

"On these facts we are of the opinion that plaintiff's remedy is at law and not in equity.

"Suits in equity will not be sustained in a Federal Court in any case where a plain, adequate, and complete remedy may be had at law. * * *

"As we view the law, suits for the recovery of personal property cannot be maintained in equity, unless the personal property is not repleviable, or is of such a

character that money damages would not compensate for its loss. * * *

"This is true, even if there is an allegation of fraud found in the bill and a prayer for the cancellation of an instrument, because, if a contract is void for fraud, it would be no more binding at law than in equity. Buzard v. Houston, 119 U.S. 347, 7 S.Ct. 249, 30 L.Ed. 451. As pointed out in Wenzel & Henoch Const. Co. v. Metropolitan Water District, D.C., 18 F.Supp. 616, 621, courts of equity have repeatedly declined to exercise jurisdiction in cases of fraud, where relief could be obtained at law; and this despite the fact that no recovery could be had at law without the court defeating, upon the ground of fraud, some written agreement."

The opinion quotes from Pomeroy on Equity Jurisprudence, Vol. 1, § 110, p. 124, as follows:

"A court of equity entertains a suit for the express purpose of procuring a contract or conveyance to be cancelled, and renders a decree conferring in terms that exact relief.

"A court of law entertains an action for the recovery of the possession of chattels, or, under some circumstances, for the recovery of land, or for the recovery of damages, and although nothing is said concerning it either in the pleadings or in the judgment, a contract or a conveyance, as the case may be, is virtually rescinded; the recovery is based upon the fact of such rescission, and could not have been granted unless the rescission had taken place. Here the remedy of cancellation is not expressly asked for, nor granted by the court of law, but all its effects are indirectly obtained in the legal action."

The plaintiff, at the hearing, contended most vigorously that the railroad rails in question possessed a unique character and value, and that money damage would not compensate the plaintiff for its actual damages.

In support of this contention, the plaintiff quoted Griffin et al. v. Oklahoma Natural Gas Corp., 10 Cir., 37 F.2d 545, 549, in which the court said: "The adequate remedy at law, which will preclude the granting of specific performance of a contract, must be as certain, prompt, complete and efficient to obtain the ends of justice as a decree of specific performance." (Citing authorities.)

Also, National Marking Mach. Co. v. Triumph Mfg. Co., 8 Cir., 13 F.2d 6, 9, in which that court said: "The adequate remedy at law, which will preclude the grant of specific performance of a contract by a court of equity, must be as certain, prompt, complete, and efficient to attain the ends of justice as a decree of specific performance." (Citing authorities.)

A reference to the complete opinions in the last two cases cited indicates fully the theory of the plaintiff in this case.

The following quotations from Pomeroy's Equity Jurisprudence, 4th Ed., 1922, are cited in the opinion in Mobile & O. R. Co. v. Zimmern, 206 Ala. 37, 89 So. 475, 477, 16 A.L.R. 1352:

" 'A further element is sometimes introduced into the case by the fact that the defendant is engaged in a business which serves public convenience and thus can plead, not only the injury to himself, but also to the public, as a reason for not granting the injunction. It should be premised in the beginning that the question cannot arise except in a case in which some sufficient reason for equity jurisdiction, such as irreparable injury or the prevention of a multiplicity of suits, exists.'

\* \* \* \* \* \*

" 'In other words, so far as the utility to the public is made the basis of an argument, it would seem to be simply urging the propriety of taking private property for public use without the requisite condemnation proceedings—the unwise policy of which cannot be doubted, * * * and it can safely be said that the argument based on the balance of injury to the defendant will be availing only in a limited class of cases.' "

An Oklahoma case also is urged by the plaintiff as supporting its contention, Dusbabek v. Local Building & Loan Ass'n, 178 Okl. 592, 63 P.2d 756, in which the Supreme Court of Oklahoma sustained the district court in granting an injunction. Since both plaintiff and defendant rely upon the Oklahoma case, a short analysis of it is proper. The association instituted an action against Dusbabek to foreclose a mortgage upon certain residence real estate. A receiver was appointed, who took charge of the property. Judgment was rendered establishing the mortgage lien and ordering a sale of the property in manner prescribed by law. Dusbabek, thereafter, applied to the judge of the court for discharge of the receiver, fraudulently representing to the judge that he was arranging to refinance the mortgage debt,

and that it was necessary for him to be in possession. The judge entered such order in August, 1935. August 27, 1935, the property was sold by the sheriff and the association, as judgment creditor, purchased. Dusbabek's objection to the confirmation of the sale was overruled. On September 22, 1935, Dusbabek detached from the real estate certain property consisting of sliding doors from the garage, a kitchen sink and the faucets and traps, electric light fixtures, a stove, lavatory, hot water heater and pipes attached from the bathroom, and a hot air furnace, and moved these attachments to an adjoining county. The association learned of this on September 26, 1935, and filed its verified application setting forth these facts and asking for injunctive relief. The court entered instanter a temporary injunction, mandatory in nature, and set the same for hearing. At the hearing, Dusbabek admitted detaching these attachments and taking them to another county, and that he did so on his own volition. The trial court found that all of said attachments, except the stove taken from the bathroom, were permanent additions to the real estate and integral parts thereof, and further found that they were yet in Dusbabek's possession and could be restored to the premises, and ordered Dusbabek to restore them at his own cost. From this order of the district court, Dusbabek appealed to the Supreme Court.

Significant elements in the Supreme Court's opinion were (1) Dusbabek's insolvency; and (2) the lack of an adequate, plain and speedy remedy at law for the association. It is evident, therefore, that the basis of this decision by the Supreme Court was the fact that there could be no adequate remedy at law since Dusbabek was insolvent and a judgment for damages would avail the association little against one wholly insolvent.

Let us examine, however, the facts in the case at bar, for the purpose of determining whether or not the plaintiff in this action has a plain and adequate remedy at law. The allegations of the bill are set out hereinbefore. The superintendent of the railroad company, for the division in which the Fort Supply dam is located, when asked by the plaintiff's attorney what he knew about the need of the railroad company for the track material involved in this case, answered: "We use this material constantly in our mainten-

ance. We are negotiating a contract now for the construction of a federal project at Frederick requiring approximately 9,000 track feet of railroad. We also are negotiating arrangements for two additional federal projects not located on my territory." When asked if he had any other available track material of that kind in his district, the witness replied he did not. The witness further stated that he expected to use the material recovered from this track to construct track at Frederick. When the witness was asked from what source the railroad company might secure sufficient material for such purposes in lieu of that which the defendant was taking, he answered: "This is the only material on my territory that we might recover for the work at Frederick. I am not entirely familiar with the other parts of the railroad except I know they are extremely short on all classes of rails. It will probably be necessary to abandon some existing tracks in order to secure material." He was asked further if he generally kept on hand in his district any amount of railroad material for emergency use, to which he replied in the affirmative, and when asked if he had any on hand at this time, he stated: "A very small supply of this class of material." He further stated that it was difficult to get railroad rails at this time. On cross-examination, when asked what difficulty there might be in obtaining material of different kinds, the witness replied: *"My only knowledge is the time it required me to secure material from the purchasing department."* The witness further stated that he received supplies for his district from the purchasing agent at St. Louis, and on direct examination, when he was asked by the plaintiff's attorney: "Would you say that this particular material that Mr. Sanders is taking is a type you could use on this project at Frederick?", he replied in the affirmative.

The defendant testified that the dam at Supply was a government project; that he felt under the contract he had a right to use this material by paying for it at the price fixed in schedule "B" of the contract; that he was using this material in a war project of an emergency character, and thus justified his use of the rails for the purpose indicated.

It is admitted that the defendant removed part of the track material and used it for another contract with the United

States Government, that is, the construction of a spur track to the Douglas bombing plant near Oklahoma City.

It also is admitted that the rails in question are such rails as would be used in side tracks but not on the main line of the general system. It is further admitted that the completion date of the contract between the defendant and the government is December 11, 1942, but that there probably would be additional work which might extend the completion date. There is further testimony that the present contract has not been completed, but that there probably will be no further use for the spur track for the additional work to be done.

■ The evidence of the plaintiff does not support its contention that the railroad company is not in a position at this time to provide sufficient rails for the purposes referred to in the pleadings and in the evidence. It is evident, however, from the testimony that the plaintiff could use the rails in question to advantage. However, the facts existing at the time of making of these contracts are governing. The first contract was made in August, 1940, the second in March, 1941, and the third in April, 1941. The contracts provided the manner in which the defendant should account to the plaintiff for any shortage in the rails which existed at the termination of the contracts, and attached to the contracts were schedules describing the quantity and cost of the various items entering into the lease contracts as a basis for payment for any shortage.

At the time the contracts were executed, the government of the United States was not at war with any nation, and while conditions arising since then have placed railroads, as well as individual citizens of the nation, upon an entirely different footing with reference to the purchase or use of many materials, yet these conditions do not in any manner change the terms' of the contracts.

■ The granting of relief by injunction, which in effect at least temporarily decides the issues in favor of one litigant as against another, is an extraordinary remedy, and such procedure is discouraged more today by the courts of the land than ever before, and most certainly should not be resorted to where there is a plain and adequate remedy at law.

■ There is no contention that the defendant is not wholly solvent and fully capable of responding in damages to any judgment which might be rendered against him for the breach of the contracts. The sole question then is whether or not the plaintiff has an adequate remedy at law. In view of the facts in this case and of the authorities submitted, this court must conclude that the plaintiff has a plain and adequate remedy at law and, therefore, is not entitled to maintain an action for injunctive relief.

The motion to dismiss will be sustained. An exception is allowed the plaintiff.